UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>JINCHAO WEI, a.k.a. Patrick Wei,<br><br>                              Defendant. | Case No.: 23-cr-01471-H-1<br><br>**ORDER DENYING DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS**<br><br>[Doc. No. 106] |

       On April 24, 2025, Defendant Jinchao Wei, represented by Federal Defenders, filed a supplemental motion to suppress his post-arrest statements made on August 2, 2023. (Doc. No. 106.)  On May 12, 2025, the Government filed a response in opposition to Defendant's motion.  (Doc. No. 110.)

       The Court held a hearing on Defendant's motion on June 2, 2025.  John N. Parmley and Adam P. Barry appeared for the Government.  Richard D. Falls and Payam Fakharara appeared for Defendant.  For the reasons below, the Court denies Defendant's supplemental motion to suppress.

<strong><u>Background</u></strong>

       On July 19, 2023, the Government filed a sealed indictment charging Defendant with: (1) conspiracy to communicate, deliver, or transmit defense information to aid a foreign government in violation of 18 U.S.C. § 794(c); (2) communicating, delivering, or

transmitting defense information to aid a foreign government in violation of 18 U.S.C. § 794(a); (3) conspiracy to export defense articles without a license in violation of 22 U.S.C. § 2778(b)(2) and (c) and 22 C.F.R. §§ 121.1, 127.1, and 127.3; and (4) export of defense articles without a license in violation of 22 U.S.C. § 2778(b)(2) and (c) and 22 C.F.R. §§ 121.1, 127.1, and 127.3.  (Doc. No. 1.)  On August 2, 2023, federal agents arrested Defendant at the BAE Systems Shipyard in San Diego as he attempted to board his U.S. Navy ship, the U.S.S. Essex.  Defendant was arrested at approximately 5:23 a.m., and he was then transported to the San Diego office of the Naval Criminal Investigative Service ("NCIS"), where he arrived approximately 30 minutes later.  (Doc. No. 106-1, Ex. A.)

      At approximately 7:58 a.m., federal agents met with Defendant and identified themselves as federal law enforcement agents from the Federal Bureau of Investigation ("FBI") and NCIS.  (Doc. No. 110-1, Ex. 1; Doc. No. 106-1, Ex. C at 228200–229700.) 230600.)  The agents then read Defendant an FBI Advice of Rights form.  (Doc. No. 106-1, Ex. C at 229700–230600.)  The FBI Advice of Rights form advised Defendant:

> Before we ask you any questions, you must understand your rights.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have the right to talk to a lawyer for advice before we ask you any questions.
>
> You have the right to have a lawyer with you during questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

(Doc. No. 110-2, Ex. 2.)  The agents then asked Defendant if he had any questions about the form.  (Doc. No. 106-1, Ex. C at 230600-230700.)  Defendant shook his head "no, " and then signed the form acknowledging, "I have read this statement of my rights and I understand what my rights are.  At this time, I am willing to answer questions without a lawyer present."  (Doc. No. 110-2, Ex. 2; Doc. No. 106-1, Ex. C at 230700-231000.)  One

of the agents then signed the waiver as a witness and dated the form "8/2" at "8:01" a.m. (Doc. No. 110-2, Ex. 2; see Doc. No. 106-1, Ex. C at 231000–231100.)

After Defendant signed the form, the agents began to interview Defendant, and Defendant provided answers to their questions. (See generally Doc. No. 106-1, Ex. C at 231000–986700.) Defendant's interview continued until approximately 2:59 p.m. (See id.; Doc. No. 110-1, Ex. 1.)

After the interview concluded, law enforcement started the process of getting Defendant booked and arraigned. The two booking windows at the Metropolitan Correctional Center, San Diego ("MCC") that day were at 8:00 a.m. and 3:00 p.m. (Doc. No. 110 at 5.) Before the arrest, the agents had reserved a 3:00 p.m. booking spot at the MCC for Defendant, but because his interview ran until 2:59 p.m., the agents missed that booking spot. (Id.) Even if Defendant had been booked at 3:00 p.m. at the MCC, however, he would not have been presented before a magistrate judge until the next day. (Id.) At approximately 5:45 p.m., Defendant was transferred to the county jail where he spent the night, and Defendant was then booked the next morning – August 3, 2025 – at the MCC. (Doc. No. 110-3, Ex. 3.) Defendant made his initial appearance on the morning of August 3, 2025 before the Magistrate Judge. (Doc. No. 8.)

## Discussion

By the present motion, Defendant moves to suppress the statements that he made to federal agents during his August 2, 2023 interview. (Doc. No. 106 at 1, 7.) Specifically, Defendant argues that his statements should be suppressed because: (1) Defendant's Sixth Amendment right to counsel was violated; (2) Defendant's right to prompt presentment before a magistrate was violated. (Id. at 2–7.) The Court addresses these two grounds for suppression in turn below.

I.  **Sixth Amendment Right to Counsel**

Under the Sixth Amendment, "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "This right attaches 'when formal judicial proceedings are initiated against an individual by way of indictment,

1  information, arraignment, or preliminary hearing.'" Rodriguez-Arvizu, 130 F.4th at 1135
2  (quoting United States v. Gouveia, 467 U.S. 180, 185 (1984)).

3  "[T]he Sixth Amendment right to counsel may be waived by a defendant, so long as
4  relinquishment of the right is voluntary, knowing, and intelligent." Montejo v. Louisiana,
5  556 U.S. 778, 786 (2009). "The burden is on the Government to prove that the defendant
6  voluntarily, knowingly, and intelligently waived this right." Rodriguez-Arvizu, 130 F.4th
7  at 1135.

8  Defendant had been indicted prior to his August 2, 2023 arrest. (See Doc. No. 1.)
9  Therefore, Defendant's Sixth Amendment right to counsel had attached prior to the August
10 2, 2023 interview. See Gouveia, 467 U.S. at 185; Rodriguez-Arvizu, 130 F.4th at 1135.
11 And Defendant did not have counsel present during that interview. As such, in order for
12 Defendant's statements during the interview to be admissible, the Government must prove
13 that Defendant voluntarily, knowingly, and intelligently waived his Sixth Amendment
14 rights prior to the interview. See Rodriguez-Arvizu, 130 F.4th at 1135; Fellers v. United
15 States, 540 U.S. 519, 523 (2004).

16 Here, the Government contends that Defendant waived his Sixth Amendment rights
17 when he waived his Miranda rights in writing prior to the start of the interview. (Doc. No.
18 110 at 5–6.) The Court agrees with the Government. The Supreme Court has explained:
19 "when a defendant is read his Miranda rights (which include the right to have counsel
20 present during interrogation) and agrees to waive those rights, that typically does the trick,
21 even though the Miranda rights purportedly have their source in the Fifth Amendment."
22 Montejo, 556 U.S. at 786. "As a general matter . . . an accused who is admonished with the
23 warnings prescribed by this Court in Miranda . . . has been sufficiently apprised of the
24 nature of his Sixth Amendment rights, and of the consequences of abandoning those rights,
25 so that his waiver on this basis will be considered a knowing and intelligent one." Patterson
26 v. Illinois, 487 U.S. 285, 296 (1988).

27 Prior to beginning their interview of Defendant, federal agents read Defendant his
28 Miranda rights, which included the right to have counsel present during interview. (Doc.

4

No. 106-1, Ex. C at 228200–230600.) The agents also gave Defendant an FBI Advice of Rights form, which described his rights in writing, and the agents asked Defendant if he had any questions. (Id. at 230600-230700; Doc. No. 110-2, Ex. 2 ("You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.").) Defendant responded "no" and then signed the Advice of Rights form, in which he acknowledged that he had read the statement of his rights, understood what his rights were, and was willing to answer questions without a lawyer present. (Doc. No. 110-2, Ex. 2; Doc. No. 106-1, Ex. C at 230700–231000.) The video evidence of the interview shows that Defendant was not coerced or compelled to waive his rights in any way. (See Doc. No. 106-1, Ex. C at 228200–231000.) Because Defendant was sufficiently apprised of his Sixth Amendment rights via the federal agents' Miranda warnings, and Defendant voluntarily waived his Miranda rights by signing the Advice of Rights form, his waiver of the right to counsel was "a knowing and intelligent one." Patterson, 487 U.S. at 296.

Defendant argues that his Sixth Amendment waiver was not knowing and intelligent because the agents did not advise him that he had been indicted or otherwise apprise him of the criminal liability he faced. (Doc. No. 106 at 6–7.) In Rodriguez-Arvizu, the Ninth Circuit recently addressed the issue of whether an accused must be told that he has been indicted before a post-indictment Sixth Amendment waiver will be valid. In that case, the Ninth Circuit expressly rejected the argument that "there is a categorical rule that a defendant must be notified of the charges in an indictment before he can validly waive his Sixth Amendment rights."[1] Rodriguez-Arvizu, 130 F.4th at 1136; see also Colorado v. Spring, 479 U.S. 564, 576 (1987) ("We have held that a valid waiver does not require that

---

[1] The Ninth Circuit noted that "the Second, Third, Fourth, Seventh, and Eighth Circuits have also ruled that a defendant can knowingly and intelligently waive his post-indictment Sixth Amendment right to counsel without being first informed of his indictment." Rodriguez-Arvizu, 130 F.4th at 1136 n.4.

an individual be informed of all information 'useful' in making his decision or all information that 'might . . . affec[t] his decision to confess.'"). Instead, the Ninth Circuit held that "the Sixth Amendment inquiry is contextual, and a waiver of the right to counsel is valid if the circumstances indicate the defendant was apprised of his rights, the criminal liability he potentially faced, and the gravity of his situation." Rodriguez-Arvizu, 130 F.4th at 1136–37.

Defendant was properly apprised of his rights by the federal agents both orally and in writing. (See Doc. No. 106-1, Ex. C at 228200–231000.) Further, the circumstances indicate that Defendant understood the gravity of his situation and the liability he faced. Defendant was arrested by NCIS officers, placed in handcuffs, and then transported to a NCIS office. (Doc. No. 106-1, Ex. A.) Defendant was then placed in an interview room for approximately two hours before a FBI agent and a NCIS agent identified themselves and met with Defendant. (Doc. No. 110-1, Ex. 1.) During the early stages of the interview, the agents reiterated that they were from the FBI and NCIS, Defendant's arrest was "a big deal," and they were not concerned with minor transgressions like a car accident or stealing a power tool. (See Doc. No. 106-1, Ex. C at 261000–268400.) And Defendant later stated that he thought the circumstances of his arrest meant that he would be "going to jail." (Id. at 291900–292400 ("I think that I'm going to jail."); see also id. at 347800–348700 ("I'm screwed. I'm screwed. . . . I'm sharing unclassified documents with him. I'm not supposed to do that.").) Nevertheless, Defendant voluntarily continued to speak with the federal agents for several more hours. As such, the circumstances of Defendant's arrest and interview indicate that Defendant understood his rights, the gravity of his situation, and the liability he faced prior to voluntarily, knowingly, and intelligently waiving his Sixth Amendment rights, and, therefore, Defendant's Sixth Amendment waiver at the start of the interview was valid. See Rodriguez-Arvizu, 130 F.4th at 1136–37.

In sum, prior to being interviewed by federal agents, Defendant voluntarily, knowingly, and intelligently waived his Sixth Amendment right to have counsel present at the interview. As such, the Court denies Defendant's motion to suppress his statements on

the grounds that were obtained in violation of his Sixth Amendment rights.

## II. Right to Prompt Presentment

Federal Rule of Criminal Procedure 5(a) provides: "A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge." Fed. R. Crim. P. 5(a)(1)(A). The rule established in McNabb v. United States, 318 U.S. 332 (1943), and Mallory v. United States, 354 U.S. 449 (1957), "clarifies that if this rule is violated, an arrested person's confession is presumptively inadmissible." United States v. Rodriguez-Arvizu, 130 F.4th 1125, 1137 (9th Cir. 2025) (citing Corley v. United States, 556 U.S. 303, 306 (2009)); see United States v. Pimental, 755 F.3d 1095, 1100 (9th Cir. 2014) ("The McNabb–Mallory rule 'generally renders inadmissible confessions made during periods of detention that violate the prompt presentment requirement of Rule 5(a).'" (quoting Corley, 556 U.S. at 309). "Under the McNabb–Mallory rule, an arrested person must be brought 'before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined.'" Pimental, 755 F.3d at 1100 (quoting Mallory, 354 U.S. at 454).

"Congress enacted 18 U.S.C. § 3501(c) in response to the McNabb–Mallory rule." United States v. Valenzuela-Espinoza, 697 F.3d 742, 748 (9th Cir. 2012). Section 3501(c) "provides a six-hour 'safe harbor' period during which a confession will not be deemed inadmissible solely because of a delay in presentment to a magistrate." Pimental, 755 F.3d at 1100.

Following the enactment of § 3501(c), the Supreme Court reaffirmed the applicability of the McNabb–Mallory rule and held that § 3501(c) "modified McNabb–Mallory without supplanting it." Corley, 556 U.S. at 322; accord Pimental, 755 F.3d at 1100–01. "The rule today is that '[w]hen a criminal defendant brings a suppression motion based on McNabb-Mallory, the district court looks to see whether the confession was obtained within six hours of arrest. If so, McNabb-Mallory does not bar its admission.'" United States v. Rodriguez-Arvizu, 130 F.4th 1125, 1137 (9th Cir. 2025) (quoting United States v. Gowadia, 760 F.3d 989, 993 (9th Cir. 2014)). "If the confession occurred after

six hours and before presentment, however, the court must 'decide whether delaying that long was unreasonable or unnecessary[.]'" Id.

Here, Defendant was arrested on August 2, 2023 at approximately 5:23 a.m. (Doc. No. 106-1, Ex. A.) Federal agents then interviewed him that same day from approximately 7:58 a.m. until 2:59 p.m. (See Doc. No. 110-1, Ex. 1; see generally Doc. No. 106-1, Ex. C at 231000–986700.) Because part of Defendant's interview occurred during § 3501's six-hour safe harbor period, any statements made by Defendant prior to 11:23 a.m. on August 2, 2023 are admissible under § 3501, and Defendant may not bring a McNabb-Mallory prompt presentment challenge to those specific statements. See Corley, 556 U.S. at 322; Rodriguez-Arvizu, 130 F.4th at 1137.

As to Defendant's statements made during the interview that occurred after 11:23 a.m., the Court must determine whether the presentment delay was unreasonable or unnecessary. See id. The Supreme Court has explained that a presentment delay can be deemed reasonable in light of the means of transportation and the distance to be traveled to the nearest available magistrate judge. Corley, 556 U.S. at 322. In addition, the Ninth Circuit has identified three additional categories of reasonable delays: "'(1) delays for 'humanitarian reasons;' (2) 'delays due to the unavailability of government personnel [and judges] necessary to completing the arraignment process;' and (3) 'delays necessary to determine whether a suspect should be criminally charged.'" Pimental, 755 F.3d at 1101 (quoting Valenzuela–Espinoza, 697 F.3d at 752).

Here, the delay at issue was due to the unavailability of government personnel necessary to complete the arraignment process. The first booking window available at the MCC following the conclusion of the safe harbor period was at 3:00 p.m. on August 2, 2023. (Doc. No. 110 at 5.) Although Defendant missed that booking window because his interview did not end until 2:59 p.m., had Defendant made that booking window, he still would not have been presented before a Magistrate Judge until the next day – August 3, 2023. (Id.) Following his interview, Defendant spent the night in the county jail, was booked at the MCC on the morning of August 3, 2023, and he made his initial appearance

before the magistrate judge later that morning on August 3, 2023. (Doc. No. 8; Doc. No. 110-3, Ex. 3.) Thus, Defendant was presented before a magistrate judge at the earliest time available following the conclusion of § 3501's safe harbor period. Because the delay at issue was due to the unavailability of government personnel necessary to complete the arraignment process, the delay was reasonable and was not a violation of Defendant's prompt presentment rights. See Pimental, 755 F.3d at 1101; Valenzuela–Espinoza, 697 F.3d at 752.

In sum, Defendant has failed to demonstrate that his right to prompt presentment before a magistrate judge was violated. As a result, the Court denies Defendant's motion to suppress his statements on the grounds that were obtained in violation of his prompt presentment rights.

## Conclusion

For the reasons above, the Court denies Defendant's supplemental motion to suppress.

**IT IS SO ORDERED.**

DATED: June 2, 2025

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT