UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,    )    Case No. 23CR1471-H
                             )
            Plaintiff,       )    San Diego, California
                             )
vs.                          )    Monday,
                             )    August 4, 2025
JINCHAO WEI,                 )    1:30 p.m.
                             )
            Defendant.       )
_____)

TRANSCRIPT OF MOTION IN LIMINE HEARING
BEFORE THE HONORABLE MARILYN L. HUFF
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          ADAM P. BARRY, ESQ.
                            United States Attorney's Office
                            601 D Street, Northwest
                            Washington, DC 20579

                            JOHN N. PARMLEY, ESQ.
                            United States Attorney's Office
                            880 Front Street
                            Suite 6293
                            (619) 557-5610

For the Defendant:          SEAN M. JONES, ESQ.
                            Jones Trial Attorneys
                            401 B Street
                            Suite 2010
                            San Diego, California 92101
                            (619) 732-6377

Transcript Ordered by:      TODD W. BURNS, ESQ.

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

*Echo Reporting, Inc.*

ii

Court Recorder:                    Lynnette Lawrence
                                   United States District Court
                                   333 West Broadway
                                   San Diego, California 92101

Transcriber:                       Chinago Okonta
                                   Echo Reporting, Inc.
                                   9711 Cactus Street, Suite B
                                   Lakeside, California 92101
                                   (858) 453-7590

1

SAN DIEGO, CALIFORNIA  MONDAY, AUGUST 4, 2025 1:30 PM

--oOo--

THE CLERK:  Calling matter number 8, 23CR1471, United States of America versus Jinchao Wei, for a motions in limine hearing.

THE COURT:  Good afternoon.

MR. JONES:  Good afternoon, your Honor.  Sean Jones on behalf of Jinchao Wei.

THE COURT:  Welcome.

MR. JONES:  Thank you.

MR. PARMLEY:  John Parmley and Adam Barry for the United States.  Good afternoon, your Honor.

THE COURT:  Welcome.

MR. BARRY:  Good afternoon.

THE COURT:  We're awaiting the Defendant.  Good afternoon.  Mr. Wei is before the Court.

First, on the matter of the potential voir dire for the jury, we've received 77 yeses and a number of nos.  Since the 77 exceeds the 60 that we had targeted -- we don't always know, even if they said yes, whether they will show up.  So since we have 77 yeses, the Court sees no need to bring in those that said no for medical, vacation, or otherwise.

Do the parties agree that we'll bring in the 77 yeses, and I'll do a blanket exclusion of the nos?

MR. PARMLEY:  That's fine.

2

MR. JONES:  Yeah, that's fine with the Defense.

THE COURT:  Okay.  Then next on the jury instructions, the Court invites the Defense to take a look at the Government's clean instructions.  You filed annotated instructions, but I haven't seen yet that you filed clean instructions.  So what I need is for each of your annotated proposed instructions, that you have court's instruction number blank, no page numbers, and then the text in double space.  I might have said font too.  Did I say font?

MR. PARMLEY:  You didn't, but I think it's -- I think it was 14 point, right?

THE COURT:  Yes.

MR. PARMLEY:  Times New Roman?

MR. BARRY:  Yes.

THE COURT:  So could you do that?  That means that when we get to the jury instructions, which will be near the end of the case, then the Court doesn't have to retype everything.  And we can pick and choose or just make slight changes to those.  And we may want you to submit it both in Word -- Word format in addition to this.

MR. PARMLEY:  Yes.  We submitted it as -- we filed a version that was obviously in PDF that had annotations and everything, and then we e-mailed -- shortly thereafter, we e-mailed a clean Word version.  So --

THE COURT:  You only e-mailed, not filed?

3

MR. PARMLEY:  We did both.  So we filed the version that has --

THE COURT:  Everything.

MR. PARMLEY:  -- annotations explaining where they come from, and then we e-mailed you a clean copy of the instructions that we are proposing.

THE COURT:  So also file, with a cover page, your clean copy.

MR. PARMLEY:  We can do that.

THE COURT:  Do you understand that?

MR. PARMLEY:  Yes.

MR. JONES:  Yes.  And even with the annotations, I probably did more work than I needed to.  I just -- coming in, you know, kind of late, I didn't want to inconvenience anybody by not submitting my own copy, but I received the Government's clean copy, and I'm sure that --

THE COURT:  You can take your annotated copy, make a clean copy, and then send that by e-mail to the Court e-file address, and then also file with the cover page, "This is the Defendant's clean set," recognizing that things may change by the end of the case.

MR. JONES:  Right.

THE COURT:  All right?

MR. JONES:  No problem.  Thank you.

THE COURT:  Thank you.

4

And then we received an exhibit list from the Government, and the Government will have a hard copy and a thumb drive of its exhibits?

MR. PARMLEY:  Yes.  There will be a binder for the Court and a binder for the witness, and there will -- we'll provide a thumb drive at the conclusion of the case with all of the exhibits on it for the jury, if that's the way the Court would want us to do it.

THE COURT:  I don't know about the thumb drive with all for the jury.  I don't know how many will actually be going back to the jury.  There might be some --

MR. PARMLEY:  Whichever gets admitted.  We will put it on a thumb drive, if that's the way the Court would prefer to do it.

THE COURT:  Okay.

MR. PARMLEY:  Yeah.

THE COURT:  I think there was some question that there were so many exhibits, that you were not going to make a copy for the Court, an extra copy.

MR. PARMLEY:  We wanted to print out the last -- if you look at the exhibit list, your Honor, the last 60 or so exhibits are technical manuals, and those are going to be the subject of one of our motions.  We kind of protect that information.  We have -- we're going to bring a printed copy into the courtroom that was --

5

THE COURT:  We just need one of those.

MR. PARMLEY:  Right.  And so that will come in.  Yeah, we're not -- I wasn't planning on providing an additional copy for anybody or in the binder.  It was just going to be -- and Counsel has a -- an electronic version and -- okay.

THE COURT:  All right.

MR. JONES:  Yeah.  I agree with that.  If we were to print out some of these documents, it's -- it would be insane --

MR. PARMLEY:  It's a shopping cart for your Honor, so -- okay.

THE COURT:  Yes.

MR. JONES:  So --

THE COURT:  Yes.

MR. JONES:  -- I'm in agreement.

THE COURT:  Okay.  So that takes care of that.

We also have the Government's witness list.  Did you receive a copy of that?

MR. JONES:  We did.

THE COURT:  And we don't have a witness list from you yet.  Are you reserving that?

MR. JONES:  Yes.

THE COURT:  Are there any for voir dire we need to know?

6

MR. JONES:  No.

THE COURT:  No.  All right.

And then I have proposed voir dire questions.  Both sides want some attorney voir dire.  Typically, I do the -- I do the voir dire and go off of your list of voir dire questions and then decide whether or not we do additional voir dire.  So don't be surprised if there's not a lot of attorney voir dire.

So I don't have your written questions.  Will you submit them?

MR. JONES:  Yes, your Honor.

THE COURT:  Thank you.  And I need them probably, to be safe, by Monday.

MR. JONES:  That's not a problem.

THE COURT:  Okay.

So I think we've taken care of that.  And then let's go over the motions in limine.

The Court has reviewed both of the motions in limine, and the Court invites you to argue, if you wish, or submit, if you wish.  Or do you want me to say my tentatives?

MR. PARMLEY:  You know, there's so many, your Honor.  I mean, I think there's a few we would like to make some comments on.

THE COURT:  Okay.

MR. PARMLEY:  But I think your tentative would be

7

helpful to guide us.  I would appreciate --

THE COURT:  So on the attorney voir dire, that's for both sides, the Court will defer ruling until the time of trial, do its own questioning of the jury.  We use the Arizona blind method.  That means that we sit 32 jurors, including the alternates.  And since it's a two-week trial, we might have four alternates.

Emil (phonetic), do we have room for those?  We might have to adjust the chairs.

And so then the Court questions all of them, including the front row of the jurors, and then asks if you have additional voir dire.  And then after the voir dire is finished, then you do simultaneous strikes on the Arizona blind  method.  Are you familiar with that?

MR. JONES:  I'm not familiar with the term Arizona blind.

THE COURT:  Okay.  So the concept is you have your peremptories, the Government has its peremptories.  You can move to strike for cause.  The Court rules on those.  The Court will hand you a list that's been from the jury of the jurors in order, and then we'll call -- which has been randomly drawn by jury downstairs.  And we'll call the jurors in order, juror number one, juror number two, on.  And then let's say juror number one is excused for cause.  Then the next person on the list that's not seated goes to that seat.

8

MR. JONES:  I'm familiar with that.  We've done that before.  I didn't know that's what we called it.

THE COURT:  Okay.  And then you do not pass the sheet.  It's not like they do theirs, and then it goes to you and you see what they do.  You do your strikes, they do their strikes after we've settled the ones for cause.  And then the first 12 non-struck jurors are the jury.  And then the alternates come from the end of the 32, 31 -- it comes from the end, those four.  And then we have the jurors and then the four alternates.  Do you think four works?

MR. PARMLEY:  Four is certainly more than enough, I think.  Well, I -- but you never know when people --

THE COURT:  It's --

MR. PARMLEY:  So I'm sure -- I think four -- I think four is safe.  We were going to recommend two or three.  Four is very safe.

THE COURT:  Okay.

MR. JONES:  I was thinking the same thing.

THE COURT:  And then you could advise the Court how many -- with four, figure out how many strikes you get of alternates and look at the Code.

MR. PARMLEY:  Okay.  And it's six in 10.  Is that correct?  Six strikes 10.  Is that what we're doing?

THE COURT:  Yes.

MR. PARMLEY:  Okay.

9

THE COURT: Okay. So any argument on number one -- Government's number one attorney voir dire?

MR. PARMLEY: No, your Honor.

THE COURT: It's granted in part, denied in part.

Motion -- Government's motion in limine number two, preclude the Defendant from referencing sentencing and other consequences of the trial, and the Defense concedes, so the Court grants that. Any objection?

MR. JONES: No.

THE COURT: The third one is to permit the Government to recall witnesses during the presentation of its case-in-chief, and you do not object. But the Court requires good cause before any witness is to be recalled. It sort of depends on how the trial flows. I'm not opposed to the concept, and I'm not sure that you need good cause, but it may be a matter of fitting in the witnesses, and so I'm assuming that the Government would be doing this in a logical fashion.

MR. PARMLEY: Hopefully, your Honor. And our thinking has changed a little bit, so as of right now, we're unlikely to call anybody more than once.

THE COURT: Okay.

MR. PARMLEY: So if that changes, we will let everybody know.

THE COURT: So it would be the rare occasion?

MR. PARMLEY: Yes.

10

THE COURT:  All right.

Then the next is that the Court exclude evidence and preclude arguments encouraging jury nullification.  And so the Court grants that, subject to argument at trial.  If there's some specific issue that comes up, then I'll hear argument before you argue jury nullification.  Any objection?

MR. JONES:  No, your Honor.

MR. PARMLEY:  No, your Honor.

THE COURT:  The fifth one is that the Court admit the Government's proposed expert testimony.  And the Defense has made this late request for a Daubert hearing.  You're coming new to the case.  Over a year -- in October of last year, we gave -- the Government gave over its report and supplemental reports, and the only thing that's changed now is one of the experts is retired and they're substituting a new one.  I had reviewed that at the time very carefully, both under Daubert and under the Rules of Evidence that pertain to expert witnesses, and concluded that it meets Daubert.  And I've seen nothing to suggest, even with the new one, that we need to have a Daubert hearing, especially at this late date. So the Court denies that without prejudice.

The sixth one -- oh, so I say I deny it.  I am -- the Government is requesting that the Court admit the proposed expert testimony.  The reports themselves do not go into evidence.  The expert testifies about the subject matter of

11

the report, but the reports themselves do not go into evidence.  So I actually am technically granting your motion and deny -- granting the Government's motion to admit, subject to laying a foundation at trial, and denying the Defense motion for a Daubert hearing absent further order of the Court.

The next one requests that the Court preclude the Defendant from making any reference at trial to the fact that certain materials were obtained or derived from FISA searches and surveillance.  And you oppose the motion to the extent that it seeks a blanket prohibition on reference to FISA, particularly before any assertion of privilege or a specific evidentiary dispute.  I'll let you argue this, but I'm inclined to say that nothing about FISA should be mentioned in front of the jury absent further order of the Court, with you not mentioning it in front of the jury and that we have further argument about why it's relevant or necessary.

MR. JONES:  I agree with that.

THE COURT:  Okay.

The next motion in limine request the Court permit the Government to admit documents from the A-File into evidence.  And in response, you contend that the A-File may include improper hearsay or statements that implicate the Defendant's Confrontation Clause rights.  And you request an in-camera review prior to the admission of any A-File

12

documents.  Didn't the Court order the Government, and I have a copy of the ones that you seek to introduce?

MR. PARMLEY:  Yes.  We produced the entire A-File to the Defense in our exhibits, which were also produced, are only the documents which we intend to admit.

THE COURT:  Yes.  So as to that one, you should review only the documents that they intend to produce and see if there's anything improper on that one.  But the Ninth Circuit case law is pretty clear that the A-File documents can be admitted.

MR. JONES:  Right.  Yeah, I agree that in general it's admissible.  I didn't want to waive objection to specific items that may be objectionable.

THE COURT:  So take a look at now -- in their exhibit list.  Now they're saying here the A-File is much more voluminous.  Now they're narrowing down, "Here are the documents."  So see if there's anything within that set of documents that we need to redact or otherwise exclude.

MR. JONES:  Got it.

THE COURT:  And how are you purporting to introduce that, through an A-File custodian?

MR. PARMLEY:  Yes.

THE COURT:  Yes.  So we'll have a live witness?

MR. PARMLEY:  Well, that's -- there's also a stipulation as to the admissibility -- or to the foundation

13

for those.  But there will be a live witness.

THE COURT:  All right.  Thank you.

MR. JONES:  Got it.

THE COURT:  And then the eighth motion in limine requests the Court permit the Government to admit certain certified business records at trial under Federal Rules of Evidence 803(6) and 902(11).  In response, the Defendant does not object to the admissibility of properly authenticated business records, but he opposes the Government's broad request to admit unspecified records without adequate notice. Now you have your exhibits that have been in the exhibit list.

MR. PARMLEY:  Yes.  And most of these have been stipulated to, the foundation of them.  That's not waiving admissibility or relevance objections, just the foundation of them.  And with one exception, there was a late -- we got certified DMV records from the Defendant's car about a month or so ago and provided those to -- we intend to introduce those.  They are certified.  If there's any objection, we'll deal it at the time.

THE COURT:  There wouldn't be objection to the DMV records --

MR. JONES:  Correct.

THE COURT:  -- right?  So I deny the motion as moot.  I think they'll come in, assuming they're on the exhibit list, have been sent over to the Defense, and are

14

properly admitted as business records.

The next motion in limine requests the Court admit Co-conspirator A's statements regarding intelligence tradecraft.  On this, I'll let you argue, if you wish.  The Court's tentative is to admit co-conspirator statement.  Any argument?

MR. JONES:  At the risk of sounding like a broken record, as I've noted several times in my motions, the Defense is generally opposed to blanket admissions of anything without knowing what additional context or evidentiary issues might come into play.  So that's one of the caveats is that -- a blanket admission of statements that may contain other objectionable material.

THE COURT:  So you're certainly -- you're going to admit the co-conspirator statements, but you have to lay a foundation for that?

MR. PARMLEY:  Correct.

THE COURT:  And then you're free to object at the time of trial, and then we -- then the Court is focused on exactly what we're talking about in context.

MR. JONES:  Exactly.

THE COURT:  All right.

MR. PARMLEY:  And to be clear, your Honor, those are specific documents.  There's not statements in the sense of recordings or anything.  They are specific documents which

15

were part of the exhibit lists -- where -- subject to review, argued, and I think attached.  And I think we filed them under seal, the attachment, or we at least requested that they be filed under seal.  And I don't know if they've been filed yet.

THE COURT:  When you filed them under seal, did you suggest that we also give them over to the Defense?

MR. PARMLEY:  Yes.

THE COURT:  Just not filed in the public record.

MR. PARMLEY:  Just not filed in the public record, correct.

THE COURT:  And could you both review the docket to make sure that that's actually the case?

MR. PARMLEY:  I think there's a pending motion to seal it right now.  But we did provide the documents through -- by e-mail.  Maybe my co-counsel can speak to this one --

MR. BARRY:  Yes, your Honor.  So when we filed the motion in limine, we also e-mailed the Court a proposed motion to seal as well as the proposed exhibits.  We were just seeking to seal the exhibits, which are the documents containing the co-conspirator statements because they contain personally identifiable information.  And so that's pending with the Court.  And once the Court rules on the motion to seal, that would be adjudicated.  That would be -- there wouldn't be anything outstanding on that issue.

THE COURT:  And do you have the document number?

16

Or is there no document number yet because it's pending?

MR. BARRY:  So it's -- there's no document number for the motion to seal.  It's related to -- let me just get the --

MR. PARMLEY:  116.

MR. BARRY:  -- document number -- right, page number 116 is the supplemental motion in limine.  And then there's an accompanying e-mail that contains the motion to seal.  But the motion to seal itself does not have a docket number yet.  So if you would like, we can file just the motion to seal, which is a two-page document, on the docket, but the exhibits are what we're actually seeking to seal.

THE COURT:  The co-conspirator statements you're seeking to seal?

MR. BARRY:  Yes, your Honor.

THE COURT:  The Court grants that.

And then separately, an additional one, which we'll get to if we haven't already, limit publications of sensitive documents at trial.  The Court grants that as well.  We'll have to figure out how we show them to the jury and not show them to the public.

MR. PARMLEY:  Right.  I think it's a tactical issue.  I don't think we need to make a big deal out of it. We were talking about -- I think we talked to your court staff about it, but I think it's -- if it's displayed to the jury,

17

to their screens, and to us at counsel table, just not on the big screens, I think that's sufficient.  I think --

THE COURT:  I just wonder if we can do that.  And so we --

MR. PARMLEY:  I don't know.

THE COURT:  I just wonder.  We'll bring our IT person here and figure out how we can just show it and not show it on the big screen.

MR. PARMLEY:  The alternative would be we will have one set of hard copies.  We're not going to go through all of them.  That would be ridiculous.  So -- but with a few of them, there will be -- we would like to show a few of them to the jury.

THE COURT:  So I agree on the concept.  We'll work out the details.

MR. PARMLEY:  All right.  Thank you.

THE COURT:  Now, back to my motions.

The next motion in limine requests that the Court protects sensitive US military documents at trial.  The Defendant is not opposed to narrowly tailored protective measures where appropriate to protect sensitive information, but the Defense opposes any pre-trial ruling that restricts courtroom publication.

Here, the Court is going to exercise its discretion at trial, because I do agree that to have sensitive documents

18

publicly displayed would be counterproductive, and yet I do want to preserve the Defense's right to make sure that those that aren't truly sensitive could be shown.  So we'll have to deal with that on a case-by-case basis.  But, in general, the Court agrees with the Government.

Is that sufficiently clear?

MR. PARMLEY:  I think so, your Honor.

MR. BARRY:  Before we move on to the Defense's motions, can we just clarify or flag two things for you in the Government's motions?

THE COURT:  You may.

MR. BARRY:  So the first is, just for Government's motions number -- motion in limine number five, which relates to expert testimony, we just wanted to make sure for the record that for the proposed testimony of Commander Caldwell, which at this point is the only challenged expert testimony, that there's an express finding of reliability just in light of the Ninth Circuit's case law in Hoagian (phonetic).

THE COURT:  The Court reviewed it back when it was filed before, and the Court did believe that it's reliable. That's subject to if something on cross triggers or something on direct that triggers the Court's revisiting of that issue, I reserve the right to do that.  But I do think that it's reliable and meets the standards of expert testimony --

MR. BARRY:  Great.

19

THE COURT:  -- including Daubert.

MR. BARRY:  And then the only other issue is for Government motion in limine number six, related to the FISA material.  I know the Court has already granted that motion. What the -- because the fact of what specific evidence was obtained via the FISA authority versus traditional criminal legal process is a classified fact and we want to avoid putting witnesses in situations where they're not sure if their answer to a question may inadvertently reveal classified information, what the Government is proposing to do is to just -- to the extent it becomes relevant how something was obtained, to use the phrase, "court authorized."  And so we just wanted to flag that.  I don't know if the Defense -- we haven't raised it to the Defense yet, so I don't know what their position is.  But that's sort of our proposal because it remains factually accurate and it eliminates the risk that somehow drawing a distinction between those two legal authorities becomes an issue in the trial.

THE COURT:  And I also think that it benefits the Defense from not referring to FISA.

MR. BARRY:  Certainly.

MR. JONES:  Yeah, I think that's a reasonable proposal.

THE COURT:  The "court authorized" -- the "court authorized" would be the way the Court prefers to handle that

20

issue.

MR. BARRY:  Thank you, your Honor.

THE COURT:  And then did I deal with your supplemental ones already?

MR. PARMLEY:  Yes.

MR. BARRY:  Yes, your Honor.  I think we'll have to figure out the logistics on the --

THE COURT:  The Court --

MR. BARRY:  -- publication of the sensitive materials to the jury, but we can work with your staff to figure that out.

THE COURT:  The Court admits co-conspirator's statements regarding intelligence tradecraft, subject to objections at trial, and the Court will limit publications of sensitive documents at trial, subject to further discussion about how we go about that.

Okay.  Then on the Defense motions in limine, the Defense moves under Federal Rule of Evidence 615 that the Court sequester Government and Defense witnesses, except those exempted under the rule, from the courtroom until after they have completed their testimony, and the Government does not object.  So the Court sequesters all Government and Defense witnesses, except those exempted under the rule from the courtroom until after they've completed their testimony.  Who will be the case agents?

21

MR. PARMLEY:  So as indicated, the two FBI agents, Laura Weatherer (phonetic) and Rebecca Frank (phonetic), and one NCIS agent, Chris Christian.

THE COURT:  All right.  Thank you.

MR. PARMLEY:  And the only other thing we flagged on this issue is -- you know, I don't want to raise this in an insensitive fashion, but the Defendant's mother has been here for every hearing.  I think she's here today.  Welcome.  But we don't intend to call her, but communications involving her will come up twice.  And so there's at least the potential that we would call her if there's some foundational issue or something like that.  There's a -- we don't intend to call her.  But if the Defense intends to call her, we would ask that she be sequestered as well.

MR. JONES:  I'll have to address that courtesy of Ms. Mei, but, at present, I wasn't intending to call her, but I do understand that position.  And I will -- if there's any likelihood that she could take the stand, then I would make sure to keep her out of the courtroom.

MR. PARMLEY:  That's fine.  Thank you.

THE COURT:  But at present, neither side intends to call her.

MR. PARMLEY:  That is correct.

THE COURT:  But there may be some reference to her.

MR. PARMLEY:  Yes.

22

THE COURT:  So I will permit you to remain in the courtroom.  At some point, if it becomes clear that you are going to be called, Mrs. Wei -- is that your correct name?

MS. WEI:  Yes.

THE COURT:  Yes.  Then we'll have to sequester you.

And will the Defense have a case agent or other investigator representative?

MR. JONES:  No, your Honor.

THE COURT:  All right.  Thank you.

The next motion in limine requests the Court admonish witnesses not to communicate with one another during the course of the trial on matters regarding the case.  The Government does not oppose.  The Court grants the Defense motion in limine.

The third motion in limine requests that the Court advise the prosecution to inform prosecution witnesses of the Court's rulings in limine regarding evidence that is excluded and not to be mentioned.  The Government does not oppose.  The Court grants the motion in limine.

The fourth motion in limine requests that each objection posed in limine motions be deemed a continuing objection.  So as to this one, and the Government doesn't oppose, but sometimes we've had some caveats because it depends on how the case progresses at trial, where something that I've made a ruling might become relevant and clear to the

23

Court.  And so I do -- you may have a continuing objection, but I do encourage you to make relevant objections strategically.  You can do it outside the presence of the jury, so you're not hurt, so that there's another double check to the Court's thinking and ruling, so that if there's some problem at trial that suddenly appears that I didn't fully understand at the time of the motions in limine, feel free on both sides to raise an objection.  And if you don't want to do it in front of the jury, please make it timely at the earliest opportunity outside the presence of the jury.  Any objection to that?

MR. JONES:  No.

THE COURT:  Any objection to that?

MR. PARMLEY:  No.

THE COURT:  So I'll say I grant in part and deny in part the fourth motion in limine and just encourage you that if we're in the middle of the case and somehow I've made an error and it's apparent, that it's brought to my attention, so we can correct that.

The fifth motion in limine requests that the Court excludes the testimony of any Government witness who is not timely disclosed.  In response, the Government argues that this motion is premature.  The Government explains that in the unlikely event of a late or mid-trial addition to the witness list, the Court can evaluate the objection at the time of

24

trial.  So they're -- you're not anticipating any surprise witness list?

MR. PARMLEY:  No, absolutely not.  But I've -- you know, I don't know what I don't know.  But I -- our witness list has been set for months with one change.  So I don't expect anything to be different, but I just don't want to be in a situation where it's a blanket prohibition if something comes up that we weren't anticipating.

THE COURT:  So I will grant the Defendant's motion in limine without prejudice to the Government making a showing outside the presence of the jury of some good cause reason why some newly developed witness needs to be called.

MR. PARMLEY:  That's fine.  Thank you.

THE COURT:  The Defendant's sixth motion in limine moves to exclude certain evidence related to geopolitical tensions between the United States and the People's Republic of China, historical espionage cases, and harm to national security on the grounds that such evidence is irrelevant and unduly prejudicial.  In response, the Government argues that the motion should be denied because evidence of how Defendant's unauthorized disclosures could potentially damage the United States and provide an advantage to China is probative of the elements of the charged offenses, which require the Government to prove why the disclosed information is related to national defense.  So on this issue, I don't

25

think we need reference to other convicted historical espionage cases, so -- I don't think we need to go into detail about geopolitical relations with China, but it's highly relevant to the charges that are brought in the indictment. So the Court denies the Defendant's motion in limine without prejudice to a contemporaneous objection at trial.  Any objection to that?

MR. JONES:  No.  Submitted, your Honor.

MR. PARMLEY:  No.

THE COURT:  The next motion in limine requests, pursuant to Federal Rule of Criminal Procedure 16(d)(2), that the Court exclude evidence that the Government has not yet produced in discovery.  In response, the Government states that there will likely be some supplemental discovery.  What are we talking about?

MR. PARMLEY:  Well, right now, your Honor, I just -- when that was written, we were doing witness prepping, so there have been a few pages that have been produced since then.

THE COURT:  To the Defense?

MR. PARMLEY:  To the Defense, yes.

THE COURT:  Yes.

MR. PARMLEY:  There's nothing -- the only thing that's pending is that -- the -- apparently, the expert that we've noticed has some prior testimony from another cases, and

26

we're going to provide that today.

THE COURT:  Okay.

MR. PARMLEY:  Other than that, I'm not aware of anything else.

THE COURT:  All right.  So the Court will defer that motion to the time of trial, but, in general, the Court's concept is that everything should have been timely disclosed to the Defense.  And the Court exempts the recent information.  That's fine.  They have that, and they'll have the expert's prior testimony as well.  And so there should be no surprises to the Court, to the Defense --

MR. PARMLEY:  There should not.

THE COURT:  -- or to the Government.

MR. PARMLEY:  No.

THE COURT:  Okay.  So that's the concept.  And so, in general, I grant it, and, in general, I deny it, subject to evaluation on a case-by-case basis.

The Defendant's motion in limine number eight requests that the Court preclude experts from testifying as to the ultimate issues in the case.  Specifically, Defendant contends that the Government's expert should not be permitted to opine on whether the Defendant has the requisite mens rea.  In response, the Government says it does not intend to use expert opinion testimony to prove the mens rea elements of the charged crimes.  That's still the Government's position.

27

MR. PARMLEY:  Yes.

THE COURT:  And so the Court denies the motion as moot.  They're not intending to do that.  And also subject to a contemporaneous objection at the time of trial.

MR. JONES:  Of course.

THE COURT:  And you do have the benefit of the names of the experts in the expert report.  And I think there's only one expert that you are really challenging.  Is that right, Caldwell?

MR. JONES:  Correct.

THE COURT:  And I -- as I said, I've reviewed the report and think that it meets the standards of the Rules of Evidence and Daubert and is reliable and -- yet you're free to make an objection at the time of trial.

Do you require the Defense to make the objection outside the presence of the jury or before the jury, or it doesn't matter?

MR. PARMLEY:  It doesn't matter, your Honor.

THE COURT:  All right.  So you're free to make an objection.

The Defendant's ninth motion in limine requests the Court limits certain expert testimony, specifically testimony from Commander Daniel Caldwell, regarding the capabilities of the United States and Chinese militaries and the potential consequences of disclosing military materials.  In response,

28

the Government argues that one of the elements it must prove is that the disclosed documents and information have the potential to harm the United States or provide an advantage to China, and Commander Caldwell should be permitted to provide opinions and testimony regarding that element.  The Court agrees with the Government, having reviewed Commander Caldwell's proposed report and scope of his testimony.  And you're free to make an objection at trial.

MR. JONES:  Understood.

THE COURT:  The Defendant's 10th motion in limine requests the Court hold a pre-trial Daubert hearing.  We've already discussed that.  The Court thinks that given the schedule, the timeliness of the submission of Commander Caldwell's expert report, the reliability of the proposed testimony, and the standards not only in Daubert but also under the Federal Rules of Evidence, the Court denies the motion in limine.

The Defendant's 11th motion in limine requests the Court exclude statements of the agents from Defendant's questioning.  Defendant contends that the statements are inadmissible hearsay.  In response, the Government argues that the statements are not hearsay because they are not used for the truth of the matter asserted, but they're being used to fully understand the Defendant's answer.  The Court denies Defendant's 11th motion in limine without prejudice to a

29

contemporaneous objection at trial.

The Defendant's 12th motion in limine requests the Court exclude certain statements from audio recordings on the grounds that they are inadmissible hearsay.  In response, the Government argues that all the statements by Defendant in the recordings are admissible under the party-opponent exception to prohibition against hearsay.  In addition, the Government contends that the statements of the other participants in the recordings are admissible as non-hearsay to show the Defendant's state of mind, effect on the listener, and for context.  The Court agrees with the Government.  And so therefore, the Court denies the Defendant's 12th motion in limine without prejudice to a contemporaneous objection at trial.

Defendant's 13th motion in limine requests that the Court exclude lay opinions of law enforcement witnesses. Defendant further moves for an order excluding non-expert testimony regarding technical data or classification.  In response, the Government explains that it will not introduce any opinion, testimony, lay or expert, regarding classification.  So, therefore, the Court denies the 13th motion in limine without prejudice to a contemporaneous objection at trial.

The Defendant's 14th motion in limine requests that the Court admit certain prior statements by Defendant for

30

context and other non-hearsay purposes.  In response, the Government contends that the rule of completeness does not compel admission of otherwise inadmissible hearsay evidence. The Court agrees with the Government, subject to a contemporaneous objection at trial.

Defendant's 15th motion in limine requests that the Court limit the Government to rebuttal during the rebuttal phase of its closing argument, and the Government does not oppose this request.  So the Court -- I think also on this one, I would be better off ruling at the time of trial.  So the Court denies the 15th motion in limine as moot, because the Government is not intending to do that, without prejudice to a contemporaneous objection at trial.

The Defendant's 16th motion in limine requests that the Court allow for attorney-conducted voir dire.  As explained, the Court will first do the voir dire, consider the proposed voir dire questions.  So if there are things that you want to be asked, make sure that you put them in your proposed voir dire.  And if there's anything that you filed now that you think, "Oh, I really want to ask this, this, and this," make sure that you file supplemental requests for voir dire by Friday.  And then I'll rule on whether the Court believes that it's prudent to permit some voir dire -- attorney-conducted voir dire.

Defendant's 17th motion in limine requests that the

31

Court exclude any classified or controlled materials that are not alleged in the indictment.  In response, the Government explains that it will only introduce evidence that is relevant to the charge count and is not otherwise inadmissible.  The Government further contends it is not required to lay out all the evidence against the Defendant in the indictment.  The Court agrees with the Government on this.  And so the Court denies Defendant's 17th motion in limine without prejudice to a contemporaneous objection at trial.

The Defendant's 18th motion in limine requests the Court exclude evidence of Defendant's immigration status or citizenship application.  In response, the Government notes and the Court notes that in this action, Defendant is actually charged with naturalization fraud, and therefore his immigration status and naturalization history are relevant to one of the charged offenses.  So the Court agrees with the Government and denies the Defendant's 18th motion in limine.

The Defendant's 19th motion in limine requests that the Court preclude the Government, its witnesses, and any other parties from referring to the Defendant as a spy, traitor, or foreign agent.  In response, the Government argues that it should be permitted to refer to the criminal conduct at issue using common terms.  The Court notes he's charged with violation of the Espionage Act.  A synonym for that is spy.  So I think in general that that would be permissible.

32

Traitor, I don't think that the Government would say that or be asking the witnesses, "Is the Defendant a traitor?"  And so to that extent, the Court would grant the Defendant's motion in limine.  But when we get to final argument, for the Government to say that someone who was a member of the United States military, as charged in the indictment, then sold sensitive materials or classified materials to someone who is affiliated with Chinese intelligence, it would be permissible for the Government to argue its theory of the case.  And so, in general, I would encourage all parties to refrain from inflammatory arguments, but I think spy, foreign agent, and traitor, depending on its context in final argument, would not be unduly prejudicial.  However, the Court would admonish the Government not to ask witnesses if the Defendant -- if they think that the Defendant is a traitor.

MR. PARMLEY:  Understood.  We wouldn't do that.

THE COURT:  How about foreign agent?

MR. PARMLEY:  We don't intend to ask that question.

THE COURT:  Okay.  And how about spy?

MR. PARMLEY:  We don't intend to ask any witness whether or not, in their opinion, that person was a spy.

THE COURT:  And so you're just leaving it for opening statement --

MR. PARMLEY:  Opening -- we're going to argue it, and the evidence as it comes in will be the evidence.

33

MR. JONES:  That's fine.

THE COURT:  And so I think on that, the motion is really moot, and the Court will defer until trial where I have a better context of what is exactly being asked.  But based on the representations of the Government, the Court grants in part and denies in part the motion in limine and also concludes that it's most likely moot.

The Defendant's 20th motion in limine requests the Court to exclude evidence of payments or financial transfers received by the Defendant as evidence of criminal intent.  In response, the Government states that at trial it will present direct and admissible evidence showing that the Defendant agreed to be paid to commit espionage and that he was, in fact, paid by his co-conspirator in China in exchange for sensitive and controlled information.  So I think that the evidence is going to come in that the Defendant was paid by someone who was affiliated with Chinese -- with Chinese intelligence.  Is that right?

MR. PARMLEY:  That's our intention when we introduce that evidence, yes.

THE COURT:  And the Court will permit that.

MR. JONES:  Understood.

THE COURT:  The Defendant's 21st motion in limine requests that the Court exclude other acts, evidence under the Federal Rules of Evidence 404(b).  In response, the Government

34

states that it does not intend to introduce 404(b) evidence except for one possible exception, and that exception is co-conspirator's statements.  That's from Andy?

MR. PARMLEY:  Correct.

THE COURT:  Yes, that the Government sought to admit through its ninth motion in limine.  And so the Court denies Defendant's motion in limine as moot.

The Defendant's 22nd motion in limine requests that he be permitted to file further motions in limine if necessary, and the Government does not oppose this request.  So I'm not calling them motions in limine.  We don't want to be on the eve of trial and then have a bunch of motions filed with the Court and no response back from the Government.  But I do not oppose the Defense request or the Government's request to bring to the Court's attention any information, outside the presence of the jury, about things that are coming up during the trial where the Court -- either side requests a ruling from the Court.

MR. PARMLEY:  Understood.  Thank you.

MR. JONES:  Got it.

THE COURT:  So I've now covered the motions in limine by both sides.  I've covered the jury instructions. I've covered the jurors who are coming to court and the method of the selection process.

What is your best estimate of the length of the

35

trial now that we're getting closer to it?

MR. PARMLEY:  I think, your Honor -- I think we will be pretty close to be finished at the end of the week, but it will be bleeding into the second week.

THE COURT:  Okay.

MR. PARMLEY:  So that was one of my questions, are we going to be in session a week from -- so Monday is -- you have calendar.  Tuesday, we're going to start the trial. Would Monday be dark?

THE COURT:  And I also share this courtroom with Judge Curiel.  And so since he has hearings on Friday, he's bumping his hearings to Monday afternoon to accommodate our trial.

MR. PARMLEY:  Okay.  So Monday will be dark for us.

THE COURT:  Monday will be dark.

MR. PARMLEY:  So I think it's very unlikely we'll finish the trial in the first week, but it would be very, very likely we would finish on Tuesday or Wednesday of the second week.

THE COURT:  Okay.  And is that your best estimate as well?

MR. JONES:  Yeah, I'll have to trust the Government on that.

THE COURT:  All right.  Thank you.

We screened the jurors for up to three weeks

36

because we don't know how long their juror deliberations would be.  So that should be fine, and they shouldn't have a problem.  But it always happens that somebody who says, "Yes, I'm available," comes to court, and for some reason, "Oh, that doctor's appointment, I didn't know about that," or, "I have to pick up my kid at noon."  Generally, I have -- we'll go from 9:00 to 12:00, and then 1:00 o'clock -- just with an hour lunch, 1:00 o'clock to 4:30.  We may, if we're close to finishing a witness, go to 5:00.  If we find that the one hour doesn't work -- most of the -- many of the jurors bring in their lunches and elect not to go out and come back in through screening.  So there might be some of the Court's own calendar things where I have to adjust that schedule, but that would generally be the schedule of the Court.  Does that work for the parties?

MR. PARMLEY:  Yes.  With an occasional break if necessary?  Is that how you're going to do it, or we're just going to go three hours?

THE COURT:  Oh, no.  And the breaks would be generally 10:30 and 3:00 o'clock --

MR. PARMLEY:  Thank you.

THE COURT:  -- for 15 minutes.  And then there -- what about witness room?  We didn't go over this.  Do we have any open witness room?

THE CLERK:  (Indiscernible).

37

THE COURT: And then do we have Judge Moskowitz? Can we ask?

THE CLERK: (Indiscernible).

THE COURT: Yes, probably.

So we have one witness room here, and then we're trying to get Judge -- is it Judge Moskowitz who's on this floor? No. Who's on this floor?

UNIDENTIFIED SPEAKER: Oh, it's Judge -- he's the chief judge on this floor.

THE COURT: We'll see if we can come up with one other witness room. We don't know -- it's the chief judge -- if we can come up with two witness rooms, one for the Government, one for the Defense. If not, you'll just have to adjust.

MR. PARMLEY: Okay.

MR. JONES: Fine.

THE COURT: I would encourage all witnesses, but -- you to admonish all witnesses. You never know who outside in the hallway is a juror or affiliate or something, so just to be sensitive about communications.

MR. PARMLEY: Is it just that little room right there? Is that where you're talking about?

THE COURT: Yeah.

MR. PARMLEY: Okay.

THE COURT: And what you could do, if we only have

38

one, is alternate day by day --

MR. PARMLEY:  Sure

THE COURT:  -- the Government, the Defense, the Government --

MR. PARMLEY:  We'll work it out with Defense counsel.

THE COURT:  Or work it out.

MR. PARMLEY:  We'll work it out.

THE COURT:  But we will try -- we will try to see if the other one is available.

MR. PARMLEY:  Okay.

THE COURT:  Is there anything that now that I've made these rulings, that either side wishes to argue?

MR. PARMLEY:  No, the only other question I had, your Honor, was that if -- the Court said that you were going to do the voir dire and there's a possibility that you would allow us some time.  Will you just tell us, "Okay.  You've got 10 minutes," or --

THE COURT:  That's what it would --

MR. PARMLEY:  Okay.

THE COURT:  Yeah.

MR. PARMLEY:  Okay.

THE COURT:  Or 15 --

MR. PARMLEY:  Or whatever.

THE COURT:  Or whatever.

39

MR. PARMLEY:  Okay.  Thank you.

THE COURT:  And it depends from trial to trial, because we've had some where the -- where it gets heated by the jury -- by the jurors' answers that it's clear that further probing is necessary.  And it's clear -- and this -- the subject matter of this may draw some interest by both the jurors and the public.  So we'll have to see.

MR. PARMLEY:  Okay.  Could you give me just one moment?

I don't have any other questions, your Honor. Thank you.

THE COURT:  Do you have any questions?

MR. JONES:  Not really with regards to the structure of the trial, but I did want to note that Mr. Wei is currently housed in El Centro, and I was hoping to have him transferred to MCC.

MR. PARMLEY:  I made a request months ago, and they were told -- I was told that they were going to move him, but I also was told that, regardless, three days in advance of the trial, he would be here.  So I had no idea that he's in El Centro.

THE COURT:  Oh.  I will order --

MR. PARMLEY:  Yes.  I have no objection to that.

THE COURT:  -- three days in advance of the trial that he be moved.  And the sooner the better.

40

MR. PARMLEY:  Yes.

MR. JONES:  Perfect.

THE COURT:  To MCC.

MR. JONES:  Yes.

THE COURT:  And how about just as soon as possible?

MR. JONES:  Exact -- yes.

THE COURT:  No later than three days prior to the trial.

MR. JONES:  Definitely the sooner the better.

MR. PARMLEY:  I agree with that, your Honor.

THE COURT:  Yes.  Okay.

MR. JONES:  And then one thing.  I was going to submit a --

THE COURT:  Then will you work out the clothing?

MR. JONES:  Yes, I'll do a -- the order for the dress out order.

THE COURT:  And it's not only me, but it's also our marshals that will need to make sure that it's compliant.  So I'll ask you to work with the marshals on how that's done.

MR. JONES:  Got it.

THE COURT:  Okay.

MR. JONES:  All right.  And then I don't know if we need to address this.  I -- docket items 118 and 120 were both my opposition to the People's motions in limine.  I meant to submit a withdrawal for 118 as there were some defects.  120

41

was the replacement of it.

THE COURT:  The Court grants that.

MR. JONES:  Okay.  Thank you.

THE COURT:  And so what we will do is do a minute order saying Defense's motion 118 is withdrawn, and the minute order will state that Defense's 120 is the replacement.

MR. JONES:  Perfect.

THE COURT:  Any objection?

MR. PARMLEY:  No.

THE COURT:  Okay.

MR. JONES:  And I thank the Government for allowing me to that.

THE COURT:  All right.

There might be observers.  And if we have overflow, we'll have to deal with how we handle that.  But there might not be.  Certainly, if we have 77 jurors here, what I intend to do is have a -- if they all show up -- another front row in the jury box.  So it would be one there, and then go through that, and then the front row.  And we'll have to figure out that we have enough chairs for the alternates.

Okay.  Anything else?

MR. PARMLEY:  I don't believe so, your Honor.  9:00 o'clock on Tuesday?

THE COURT:  9:00 o'clock.

Oh, good news.  We can borrow Chief Judge Bashant's

42

witness room through 8/22.

MR. PARMLEY: Okay.

THE COURT: So hopefully we'll be done by then.

MR. PARMLEY: Great.

THE COURT: And if not, then you can't have it. But she has a trial on 8/25. So you can flip a coin or work it out, decide who gets what, or one day one, one day another, although then you can't leave things there.

MR. PARMLEY: We'll work it out, your Honor.

THE COURT: All right. Thank you. Anything else?

MR. PARMLEY: I don't believe so.

MR. JONES: Not from the Defense.

THE COURT: All right. Thank you.

MR. PARMLEY: Thank you.

THE COURT: We will see you Tuesday at 9:00 o'clock. Absent further order of the Court -- I was trying -- if -- I believe since we're telling the jurors to be here, we'll have to do it Tuesday at 9:00 o'clock. There might be -- on Tuesday afternoon, I might have to recess early. We'll just have to see. All right.

MR. PARMLEY: So long as there's no fire drill, that's okay. Yes. Thank you.

THE COURT: Thank you.

MR. PARMLEY: We'll send it again this afternoon.

THE CLERK: Thank you.

43

MR. PARMLEY:  We'll send it for the first time if we didn't send it the first time.

THE COURT:  Okay.  We'll go back on the record.  Go back on the record.

My courtroom deputy says that we cannot locate yet the motion to seal.  Please resend it.

MR. PARMLEY:  We will.  Yes, your Honor.

THE COURT:  And you can resend it by the e-file.

MR. PARMLEY:  We will.

THE COURT:  Thank you.

MR. PARMLEY:  Thank you, your Honor.

(Proceedings concluded.)

44

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/Chinago Okonta                    3/2/2026
Transcriber                          Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

/s/L.L. Francisco
L.L. Francisco, President
Echo Reporting, Inc.