UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,    )   Case No. 23CR1471-H
                             )
            Plaintiff,       )   San Diego, California
                             )
vs.                          )   Monday,
                             )   August 12, 2024
JINCHAO WEI,                 )   1:30 p.m.
                             )
            Defendant.       )
_____)

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MARILYN L. HUFF
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          ADAM P. BARRY, ESQ.
                            United States Attorney's Office
                            601 D Street, Northwest
                            Washington, DC 20579

                            JOHN N. PARMLEY, ESQ.
                            FRED A. SHEPPARD, ESQ.
                            United States Attorney's Office
                            880 Front Street
                            Suite 6293
                            (619) 557-5610

For the Defendant:          JASON T. CONFORTI, ESQ.
                            Law Office of Jason T. Conforti
                            600 West Broadway
                            Suite 700
                            San Diego, California 92101
                            (619) 274-8036

Transcript Ordered by:      TODD W. BURNS, ESQ.


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

ii

Court Recorder:                    Lynnette Lawrence
                                   United States District Court
                                   333 West Broadway
                                   San Diego, California 92101

Transcriber:                       Chinago Okonta
                                   Echo Reporting, Inc.
                                   9711 Cactus Street, Suite B
                                   Lakeside, California 92101
                                   (858) 453-7590

1

SAN DIEGO, CALIFORNIA  MONDAY, AUGUST 12, 2024 1:30 P.M.

--oOo--

THE COURT:  Calling matter number 14, 23CR1471, United States of America versus Jinchao Wei, for a motion hearing.

MR. SHEPPARD:  Fred Sheppard, John Parmley, and Adam Barry on behalf of the United States, your Honor.  Good afternoon.

THE COURT:  Good afternoon.

MR. PARMLEY:  Good afternoon.

MR. BARRY:  Good afternoon.

MR. CONFORTI:  Good afternoon, your Honor.  Jason Conforti on behalf of Mr. Wei, who's in custody and should be present shortly.

THE COURT:  Good afternoon.

Jinchao Wei is now before the Court.  We have motions pending.  There's a motion to strike what's alleged to be surplusage.  The Government opposes.  And then there's a request by the Defense for a second lawyer.  The -- as to the motion to strike the surplusage?

MR. CONFORTI:  Your Honor, I think before we get into this, there's some things that have transpired over the past week that the Court, I think, should be aware of with respect to discovery.  And addressing that first would probably shape up whether or not we go forward with this

2

hearing and the dates we set for further hearings.

THE COURT:  Well, I think on the motion to strike the surplusage, that's simply a legal issue.  It doesn't depend on whether discovery has been provided or not.

MR. CONFORTI:  Understood.  And I was prepared to -- I was prepared to address that motion today.  And your clerk -- if I may, this Court issued a discovery order regarding Brady August 3rd of last year.  Your court clerk reached out on Tuesday evening at 5:15, whether or not the parties were going to be prepared to go forward with the hearing today.  The Government responded within the hour quite enthusiastically, they wished to go forward.  And then I don't know, 16 hours later, the Government e-mails me Wednesday morning -- I'm talking last Wednesday, less than a week ago -- with a new discovery production in which there's 300-plus gigabytes of discovery that's been produced after pre-trial motions were set to be filed, within a week of the hearing. And so, to me, that's rendered me ineffective at best.  How can I possibly go through 300 gigabytes of discovery in less than a week, be able to digest it and figure out what additional motions I need to add to the motions that have been filed, or where we go from here?

THE COURT:  Well, there's a request to file further motions.  And so certainly as to the new matter, that -- you could file further motions, and we have ample time before

3

December for you to address that.

MR. SHEPPARD:  That's how I was going to respond, your Honor.  There was certain discovery that was put out.  We held certain information to put out because we were waiting for your Honor's rule on the CIPA.  And then once we got that, we took steps to abide by that particular order.  We have now pushed out the discovery.  But that is exactly why, in our response, we said, if there is something that comes up in Counsel's review of those particular items that (indiscernible), we would certainly not oppose any further motions.  I mean, like your Honor said, we still have nearly four months before trial.  If that's the case, we're happy to sit down and also go through it.  We provided a detailed index.  We had previously sat down with Counsel and the Defendant and provided a thorough reverse proffer as to the case, the evidence underlying it, providing specific examples of what evidence we intend to produce or seek to produce and admit at trial.  And so I don't believe that's an issue.  It certainly doesn't bear on the two legal arguments set before this Court.  The motion to strike surplusage is not in any way dependent upon that discovery.  That is a purely legal argument dependent upon the indictment and the controlling case law and/or the practices of this Court.  A motion for clearance is dependent upon what we believe and settled with regards to the CIPA and FISA motion, and so that has nothing

4

to do with unclassified discovery that has now been put out as well.

So --

THE COURT:  There's nothing in the new discovery that is subject to CIPA?

MR. SHEPPARD:  There is nothing in the new discovery that's classified at all.

THE COURT:  All right.  So you're miffed that they waited to provide this additional information to you.  But I understand your frustration.  At the same time, the trial is not until December, so there's ample time to review it, and the Government is making representations to the Court and to you that there's nothing in the new discovery that's classified.

So as to the motion to strike surplusage, I don't see any prejudice, the indictment doesn't go back to the jury room, and it provides some context to the allegations of the indictment.  So would you like to be heard on that?

MR. CONFORTI:  Before I go forward with that, your Honor, I would like to complete my record with respect to this Court's Brady order and get some sort of understanding why 300 gigabytes of discovery was withheld for over a year.  This was a proactive investigation.  They investigated my client for over a year before this case was indicted and filed.  This Court issued a discovery order telling the Government and

5

instructing them to turn over all evidence in a timely manner. That was August 3rd of last year.  This came forth August 6th of 2024.

THE COURT:  But in the interim, we have taken steps to complete the CIPA review and the steps in the Court's issued orders that reflect the Court's rulings in that regard. We've done scheduling orders, and the Court has been quite amenable to adjusting the scheduling on joint motions or other applications.  And the Court has done a very thoughtful timeline for the schedule.

As to the new discovery, I don't see that you're prejudiced in retaining the current schedule that we have.

MR. CONFORTI:  Well, your Honor -- and I think this Court -- my issue -- let me back up.

My issue is not with you, your Honor.  My issue is not with this Court.  This Court has been nothing but respectful to me and been flexible in adjusting the scheduling orders.  But this Court did issue an order with respect to Brady, which is a proactive obligation on behalf of the Government.  And the Court's sentiments with respect to prejudices I don't think is the right view with respect to a pre, not post-trial analysis -- the post-trial Brady analysis. Usually, there's a broad brush in which there's insurmountable evidence and there's easy ways to eschew any sort of potential prejudice by an actual Brady violation, because, yes, it

6

occurred, but it didn't amount to prejudice because we have the process of hindsight, right?  And we have that benefit. Here -- and I think the most salient case on that, and I apologize I didn't have a chance to brief it, I was scrambling all weekend trying to deal with what to do with this new discovery, I was with my client until they kicked me out last night at MCC, so I didn't have a chance to brief it.  But the case on point is Cloud (phonetic), and it talks about the proper view from the Ninth Circuit that we need to take in a sort of proactively addressing Brady issues by not complying with the Court's Brady orders while the case is still pending because the analysis just isn't as simple as whether or not there's prejudice or not to a defendant, right?  That's a post-conviction or a post-trial analysis of a Brady violation. But while the case is pending, I think Cloud is on point.  I'm happy to brief it further if we need to, but I would like to make my record now, understanding that the surplusage issue is a legal issue, we can discuss my request for clearance and/or a second counsel who is security-cleared because there are things I think need to be handled that way in addition to the CIPA ruling by this Court.

But getting back to the Brady issue, this isn't a housekeeping matter.  This renders and bears on the Fifth and Sixth Amendment of Mr. Wei's constitutional rights to due process and the effective assistance of counsel.  And I don't

7

come in here pounding the table every day saying due process violation, dismiss my case -- that's not my manner of practice.  But when I get -- when I have the Court ruling on scheduling orders, largely at the request of the Government, who's trying to drive this train to a date certain but also are the ones that are sitting on evidence -- and it's not three or four pages.  It's 300 gigabytes of information.  There's over 200 that I've been able to identify, 200 audio files that seem to be lengthy, in Mandarin, which I do not speak, right?  That's just scratching the surface of some of the things that are here.

THE COURT:  Do they have a translation provided or not?

MR. SHEPPARD:  There have been translations provided as to any substantive evidence the Government intends to offer at trial, 100-percent.  I would like Counsel to finish before I respond.

MR. CONFORTI:  So that's what I'm struggling with, your Honor.  This is not three or four pages here, "Oh, we forgot this report" there.  I understand those things.  We're all human.  This is a year into the process after this Court reminded the Government of their Brady obligations.  I've been squawking the whole time about -- I don't feel I have, really, very much stuff.  I've been precluded from seeing a lot of evidence and reviewing it with Mr. Wei, understandably because

8

of protective orders and CIPA protocol, but here we are. They want to set a briefing schedule. My motions were due in June. They know our hearing is today. They've filed their response. And then after receiving an e-mail from your clerk asking if we're going forward, the following morning I get a notification of a hard drive of 300 gigabytes. I want to know the reasons and motives. Why -- why was this withheld for so long? Should there be some ex parte order that was granted that I don't know about, I'll gladly accept that. But, of course, if it was ex parte, I wouldn't know. But if -- I know -- I've had cases in the past where I've been really upset I didn't get something and the Government owned up to it, but then they also provided me an order from the judge delaying discovery production. I said, "Okay. So we're both right, but I get why you did it now."

THE COURT: Was this related to the timing of the CIPA review and other matters?

MR. SHEPPARD: It was related to the search warrant review, the CIPA review, and certain steps that had to be taken in accordance with the CIPA order.

I would also point out, your Honor, this -- a similar argument has come up in another case. It's why I know what the Cloud case is. And perhaps the Cloud case is the most instructive, and we should adopt it, because in there, the material that was turned over was in the middle of a

9

trial.  So if Counsel can point to a single case, just one, that provides that information that's been held over in discovery and tendered approximately four months prior to trial would amount to prejudice, I would like to see it. Because the most I have seen before has been about a week, or a week and a half on certain evidence at this point in time. But Cloud and similar cases are talking about giving evidence over in the middle of trial.  This was text messages the date before or the day before the witnesses were supposed to testify in a five-body homicide trial.  Well, it's not the same.  And Counsel can say he's not pounding the table.  He is.  If he goes through this discovery and he sees that there are motions that he needs to file back to a point in time in good faith, it's why we specifically said, "Yes, if you see something that comes through with regards to this, file the motions."  We aren't going to oppose them as untimely.  Not at all.  No problem.  We will come back before this Court, allow time for you to brief them and argue them to the Court, and adjust accordingly.  But this discovery -- I understand the 300 gigs, which is due large part to the native format that we had to provide certain material over with.  That's why this is the large amount that it is.  It's not as if we tendered over 10,000 of these particular photographs or 10,000 of these particular text message or reports.  We had to provide over native format items during the course of this, both as to a

10

discovery that we had been ongoing for and also so we could be in accordance with and (indiscernible) to the CIPA order.  But this is -- the fact that this discovery has been tendered almost four months to the day before trial, this is not a Brady issue.  And if he does -- if Counsel thinks that, then the appropriate thing to do is brief it.  No problem.  We will respond accordingly.  We can set it for arguments ahead of the trial.

THE COURT:  Can you give the Court some indication of why it was delayed until now?

MR. SHEPPARD:  Sure.  Some of this was native format discovery that we were utilizing to include certain discovery that was the subject of the CIPA order, along with such items.  That's due in large part to the native formats with regards to it.  There were some other reports that went over.  Those are clearly marked in the discovery index at this particular point in time that we had to take certain steps with or did take certain steps with those reports, as far as declassification, at various times.  But we have done everything in good faith.  And we provided this real-time index to Counsel when we sent it over to him.  So if he really does believe this, if he believes that there was some discovery or Brady violation, he's more than happy to brief it.  But there is in no way that this amounts to a Brady violation before this Court or any other, in the Ninth Circuit

11

or otherwise.

THE COURT:  All right.  So then back to the motion to strike the surplusage.

MR. CONFORTI:  Understood, your Honor.  But for the record, I understand it's four months before the trial date. It's over a year after the Court issued the Brady order in this case.

THE COURT:  But that's ignoring the fact that a lot would be dependent on what the Court would do on the search warrant or the CIPA orders.  And so those happened in the interim.  The schedule was pushed way out by Counsel.  There's ample time for you to review this additional information between now and the time of trial and for you to file appropriate motions and, if appropriate, ask for a continuance of the trial.  At this point, I don't see why a continuance would be warranted.

MR. CONFORTI:  Well, your Honor, I fully intend on filing additional motions and likely filing a motion for continuance once I've had a chance to review and digest this, so that I can actually articulate what's happened in the 300 gigs of discovery and what I need -- what the Defense need is for a continuance.  I'm not even in a position to argue that today.  I can just tell you how much discovery I received.  I got dropped in the middle of an ocean.  I'm trying to figure out which way to swim.  That's my issue.

12

But I'm happy to go back to the motions today, and I submit on my briefing. I understand that it doesn't go back to the jury room. I got that. I understand my briefing with respect to my position. I think it should be stricken. It's a speaking indictment. The Government has filed their response. I'll submit on the surplusage issue on the pleadings.

THE COURT: Thank you.

The Court denies the motion to strike surplusage. The Court finds no prejudice to the Defendant and no good grounds to grant the motion to strike. And I don't call it surplusage. I call it context as well.

Then on the request for Defense counsel security clearance or appoint cleared counsel, the Government has made a representation on more than one occasion to the Court that no classified information is going to be utilized in the trial in the Government's case-in-chief.

The Court declines -- in light of the Court's orders on the search warrant and also on CIPA, the Court declines to see the need to grant a security clearance or have yet another counsel.

And this -- so if you want to talk about delay, you're complaining that the Government is giving you new discovery. They could contend that this could have been brought a long time ago. But when the issue first came up,

13

also involving the Court -- did the Court need to get a security-cleared court reporter? -- the representation by the Government then and now is no, that they're not going to be utilizing classified information in the trial.  And from the Court's review in-camera of the information, the Court cannot find some grounds -- if I put on my best defense hat -- to say why you would need a security-cleared lawyer to review materials that are not classified.  So the Court denies that motion as well.

We'll set another motion hearing date.

MR. CONFORTI:  Okay.

THE COURT:  And then you can file any appropriate motions for that hearing date as well.

MR. CONFORTI:  Your Honor, I don't know if I'm in a position to do that at this time because I have to figure out how long it's going to take me to work my way through this 300 gigs, how much of it will need an interpreter engaged for translation to let me know what these audio files are before I can identify and get an idea of when I can brief it.  And this is not a delay tactic.  I just want to be reasonable with my response to the Court.  I don't want to reflexively agree.

THE COURT:  So your client speaks Mandarin, right? Your client speaks Mandarin?

MR. CONFORTI:  He does.

MR. SHEPPARD:  They're also his jail calls.  So one

14

of the best individuals to perhaps translate would be his client in that regard.  So --

THE COURT:  Well, you're free to get a -- you're free to hire an interpreter as well, but I'm saying that if they're his jail calls, then you have some other resources to figure out what's on these.

MR. CONFORTI:  Understood, your Honor.  And I'm not trying to be tongue-in-cheek, and in no way am I disparaging Mr. Wei, but if I took my client's word for everything -- I've never represented a guilty client.  So that's why I need a professional to go through this with me to get these things interpreted in transit.  I understand he can be a resource, and he's been very helpful in my meetings with him, but I don't know if that's the proper calculus for determining how I'll be able to work my way through this.  Given that there's a protective order, that would require me or someone from my Defense team to be sitting at MCC with access to this information to review it with him because we cannot leave it with him.  It's not as if I can give it to him and he can do his 24-hour-a-day review and then get me an update by the end of the week.  Someone needs to sit there with him.  So I would need an investigator or somebody to sit there with him to go over these files, which also, again, takes time, and I don't know their schedule.  And I'm not trying to create issues here.  I just -- logically, the way this process is going to

15

play out with these protective orders, even when I meet with Mr. Wei to go over these discovery materials, someone has to meet with him, go over the discovery, and bring it back.  I cannot leave it with him.  Am I wrong?

MR. SHEPPARD:  Maybe the best way is that if Counsel can go through the discovery and do an initial review and see whether or not there really is something there.  We're also happy to sit down with Counsel and walk through it as well.  But rather than --

THE COURT:  Do you have a Mandarin --

MR. SHEPPARD:  -- speculate --

THE COURT:  -- interpreter at your disposal?

MR. SHEPPARD:  We have the ability to provide certain translations, of which we have done with regards to it.  We've had individual things.  I can't -- I don't have the ability to translate everything with regards to this because we are also contracting out in that regard.  But we will -- we're happy to sit down.  We've made this offer and have it done so in the past to sit down with Counsel and walk through the discovery and things with him.  So rather than speculate as to what this could be, if Counsel wants to sit down with us or not, it's up to him at that point, but we're happy to do that.  But if he could perhaps just look at what was given before we speculate that the sky is actually falling in this particular point.

16

THE COURT:  Thank you.  Beyond the jail calls, what else was provided?  There's some additional reports.  Is that right?

MR. PARMLEY:  Thank you, your Honor.  I'm just looking at the index now.  The vast majority of the information is stuff that would not be introduced at trial by the United States but was produced pursuant to our discovery obligations.  For example, there's reports related to a confidential informant that was used -- that information was used to get a search warrant.  That search warrant was provided long ago.  This is just some of the underlying reports that were used for the search warrant.  For example, some notes from interviewers who were watching the interview of the Defendant.  We've already provided the actual video and audio of the interview, orders for pen registers, orders for extensions of pen registers, grand jury requests for Citibank accounts, previously provided letters from the DDTC, which had been previously provided, some jail phone calls, translation of jail -- of a few jail phone calls.

THE COURT:  Explain DD --

MR. PARMLEY:  DDTC, the Department of Defense --

MR. SHEPPARD:  Directorate of Defense and Trade Controls.

MR. PARMLEY:  Directorate of Trade Controls.  That letter had already been provided.  I think it was provided

17

again.  There's a little bit of duplicity here, your Honor. Some underlying information about these confidential informants that were used in the search warrant or things that they spoke about, photographs of a search warrant into his vehicle.  There's nothing we're using from the search warrant of his vehicle at the trial.  But we provided all the search warrant photos, search warrant photos from his residence.  I'm not entirely sure we're going to use anything from that, but just in an abundance of caution, producing all that.  And then of course data files of iCloud search warrants and things like that, which are, you know, large digital files.  But like we said, we're happy to go through with Defense counsel and point out what we think is pertinent -- what we're planning on introducing.  We plan on producing -- you know, providing an exhibit list significantly in advance of trial to assist with that.  I think that's helpful.  But as far as, you know -- I don't think the mention of just the volume is super helpful as to what was actually produced.

THE COURT:  I did have a question.  There's two counts.  There's the immigration count and then the other count.  Are they going to be tried together, and do we have legal authority to do that?

MR. SHEPPARD:  We are -- we have charged -- there are multiple counts.  But I think what your Honor is saying is there's kind of the espionage, export side of the case with

18

regards to those counts --

THE COURT:  Uh-huh.

MR. SHEPPARD:  -- which include the conspiracy to commit espionage, actual substantive espionage, conspiracy to commit export violations, and then I honestly don't remember how many counts of substantive export violations, and then the naturalization.  Yes as to that and part and parcel with regards to it, because these things are inextricably intertwined during the course of it.  We would be offering that same evidence with regards to it anyway, because at this point in time, there are certain conversations -- and we've already actually gone over those with Counsel and with the Defendant in a reverse proffer -- there are certain conversations back and forth between the Defendant and the intelligence officer to whom he was passing and taking direction specifically about his citizenship and the timing of certain recruitment, as well as between the intelligence officer and the Defendant at the time of his citizenship when the intelligence officer provided a reward or gift to the Defendant for obtaining his citizenship in the spring of 2022.

THE COURT:  So it's Rule 8?

MR. SHEPPARD:  It is.

THE COURT:  And the indictment or information may charge a defendant in separate counts with two or more offenses if the offenses charged, whether felonies or

19

misdemeanors or both, are of the same or similar character or are based on the same act or transaction or are connected with or constitute parts of the common scheme or plan.  And you say that there is overlap.

MR. SHEPPARD:  There's 100-percent overlap, and we provided -- the Defendant was communicating via Telegram and WeChat during the course of this.  And those conversations between the intelligence officer and the Defendant touch upon not only the espionage export control but his naturalization and citizenship during the course of it.  In fact, his initial recruitment he put off temporarily because he was going through his citizenship applications and requirements at that point.

If Counsel wishes to -- I mean, that motion, again, is much like the surplusage.  That's a motion on the indictment.  To the degree that Counsel wants to try to do a motion to sever counts at this particular point in time, I mean, that's -- there's nothing really in this evidence that goes to that that he wouldn't already have because we've already provided all the communications between the Defendant and his intelligence officer, which would be the grounds for this and certainly our response that they should not be severed.  But if Counsel wants to provide and file a motion to sever and provide the basis for why that would be based upon this new evidence as opposed to something else, and then

20

subsequently argue it, we would of course respond if necessary.

THE COURT:  So could we set the next motion hearing for November 4 at 1:30?  And that'll get -- and then the Court also suggests that it would be prudent for Defense and Government counsel to meet together and go over this new discovery, and you can assist in that regard.  He's not going to rely on you, as he --

MR. SHEPPARD:  Of course.

THE COURT:  -- of course should not, but it may facilitate his review of the evidence.

MR. SHEPPARD:  100-percent.  And we will make ourselves available at his leisure.

MR. CONFORTI:  November 4 at 1:30, your Honor?

THE COURT:  November 4 at 1:30.  Does that work for everybody?

MR. SHEPPARD:  Works for the Government, your Honor.

THE COURT:  So any motion should be filed two weeks in advance, with one week to respond, unless the parties submit a different plan to the Court.

MR. SHEPPARD:  Thank you, your Honor.

MR. CONFORTI:  Thank you, your Honor.

THE COURT:  In my filing and in your schedule, did we set out times for experts?

21

MR. SHEPPARD:  We did set out expert disclosures. We have been working with that.  We will meet that expert disclosure, which is in October 17th.  Yes.

THE COURT:  All right.  Anything further?

MR. SHEPPARD:  Nothing from us, your Honor.

MR. CONFORTI:  Not at this time, your Honor.  Thank you.

THE COURT:  Thank you.

The Court finds -- the Court continues to find the case complex, and the Court finds valid excludable time under the Speedy Trial Act.

MR. SHEPPARD:  Thank you, your Honor.

MR. CONFORTI:  Thank you, your Honor.

THE COURT:  Thank you.

MR. SHEPPARD:  Thank you.

THE CLERK:  That concludes the calendar, and we're off the record.

(Proceedings concluded.)

22

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/Chinago Okonta                    3/2/2026
Transcriber                          Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

/s/L.L. Francisco
L.L. Francisco, President
Echo Reporting, Inc.