UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 23CR1471-H |
| | ) | |
| Plaintiff, | ) | San Diego, California |
| | ) | |
| vs. | ) | Monday, |
| | ) | March 10, 2025 |
| JINCHAO WEI, | ) | 3:00 p.m. |
| | ) | |
| Defendant. | ) | |

TRANSCRIPT OF ORDER TO SHOW CAUSE HEARING
BEFORE THE HONORABLE MARILYN L. HUFF
UNITED STATES DISTRICT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | JOHN N. PARMLEY, ESQ.<br>United States Attorney's<br>  Office<br>880 Front Street<br>Suite 6293<br>(619) 557-5610 |
| For Defendant: | JASON T. CONFORTI, ESQ.<br>Law Office of Jason T. Conforti<br>600 West Broadway<br>Suite 700<br>San Diego, California 92101<br>(619) 274-8036 |
| Transcript Ordered by: | TODD W. BURNS, ESQ. |
| Court Recorder: | Lynnette Lawrence<br>United States District Court<br>333 West Broadway<br>San Diego, California 92101 |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

*Echo Reporting, Inc.*

ii

Transcriber:                        Chinago Okonta
                                    Echo Reporting, Inc.
                                    9711 Cactus Street, Suite B
                                    Lakeside, California 92101
                                    (858) 453-7590

1

SAN DIEGO, CALIFORNIA  MONDAY, MARCH 10, 2025 3:00 P.M.

--oOo--

THE CLERK:  Calling matter number 4, 23CR1471, United States of America versus Jinchao Wei, for an order to show cause hearing.

MR. PARMLEY:  John Parmley for the United States. Good afternoon.

THE COURT:  Good afternoon.

MR. CONFORTI:  Good afternoon, your Honor.  Jason Conforti on behalf of Mr. Wei, who is in custody and will be present shortly.

THE COURT:  Thank you.  Good afternoon.

Good afternoon.  The Court had received a submission from Counsel, which I wished I would have had before.  And I can say that it does show some medical grounds for the continuance, which the Government does not oppose on those grounds.  Is that right?

MR. PARMLEY:  That's right.

THE COURT:  The Court wished it would have had this information before, and I can say when -- for many, many years, I was the CJA Committee chair.  And whenever CJA counsel had any medical problems, we always worked with counsel to try to make sure that counsel was providing effective assistance of counsel, but also then addressing any medical issues that you have.  Some of the concerns predated

2

those matters, and the Court has reviewed the docket and then contemplated appointing Federal Defenders as co-counsel, and I invited Michelle Betancourt to this hearing.  She -- would you like to come forward -- in the Court's view, providing additional resources to Mr. Conforti based on his medical circumstances and also the fact that randomly he was appointed three very large cases all at once that come to fruition at -- on or about the same time is not something of his making, it's something of the Court's random appointment, which we can discuss at a later time about the Court's methodology of appointing counsel in complex cases, which is a worthy discussion.

But nevertheless, Mr. Conforti believes that he has a relationship with Mr. Wei.  Mr. Wei has not said -- has not made the request for new counsel.  But appointing Federal Defenders as co-counsel will provide Mr. Conforti with additional resources.  Due to the Court's calendar, we can't continue it for six weeks as he initially suggested, so that would provide additional time for Federal Defenders to get up to speed.

I understand that you have some concerns about that and would prefer to be sole counsel rather than co-counsel, but anytime we have co-counsel, co-counsel has to work together.  And if there's a disagreement between co-counsel, you can bring that ex parte to the attention of the Court.

3

The Court can listen to the situation and make an appropriate determination.  But I'm reluctant to give up all of Mr. Conforti's work on the case, and he doesn't --

You're not requesting to be relieved at all.  And would you be willing to work with Federal Defenders?

MR. CONFORTI:  If the question is directed towards me, I mean I respect Mr. Wei's counsel of choice.  I have no problem at all working with Federal Defenders.  It opens up tremendous resources to a smaller law firm, alleviates a lot of the need to go through certain CJA sort of budgeting financial hoops because they have resources there.  It's one of their many powers.  So I have no issue with it.  I told the Court I work well in teams.  I've worked with teams of various magnitudes on different cases.  Never have I had the privilege of working with Federal Defenders, but I'm not opposed to it.

THE COURT:  All right.  Thank you.

MS. BETANCOURT:  Your Honor, and just so that federal -- Federal Defenders is at the Court's -- you know, was more than willing to step in and help the Court in any which way.  Our -- just, our concern, I think, is, one, who would be lead counsel?  If we were to review everything again and see that there was an issue or some strategic call that was made by Mr. Conforti, is that the type of thing we're coming to the Court if we can't work out?  Or what -- are we just being tagged in to review discovery and help him prepare

4

-- I guess I would be -- I'm a little unclear as to --

THE COURT:  I think you would be co-counsel.

MS. BETANCOURT:  Okay.

THE COURT:  And then decisions such as -- since we're continuing the trial, if there are motions in limine to be filed, you can discuss them with Mr. Conforti and decide to do that if you -- now that we're continuing the trial.  If he and you decide to have experts, you can revisit that issue as well but would have to submit a proposed scheduling order to the Court.

MS. BETANCOURT:  Okay.  And then just finally, your Honor, should Mr. Conforti's medical issue become something -- I was not privy to whatever he submitted under file -- under seal to the Court.  Should those issues become, is that something he's going to raise sooner rather than later, so that Federal Defenders then takes the reins or --

THE COURT:  That's what I would contemplate.  I'm optimistic that those issues can be addressed and that they will be alleviated by giving him additional resources to -- and a continuance of the trial in order to, again, prepare for trial.  Should it come -- should there come a point in time that there are concerns, the Court reserves the right to then appoint Federal Defenders to take over the case.  I don't think we're there yet.

MS. BETANCOURT:  Okay, your Honor.

5

MR. PARMLEY:  So, your Honor.  I just -- I feel like I need to make a little bit of a record, just because of some concerns.

We had an unusual hearing last week.  I think we can all agree on that.  There was a request to continue the case.  The United States opposed the request.  And the Court sua sponte had concerns about Counsel's effectiveness and considered removing him.  Counsel submitted something under seal, and now we're kind of on middle ground, which is apparently Counsel is effective -- I think that's what the Court is ordering -- is ruling on the record, that based on your review of the materials, you don't have any reason to believe that he's ineffective.  I have to worry about future appellate issues down the road, your Honor.  I have to put -- you know, try to manage appellate risk.  And here we have kind of a new novel baked-in issue of ineffective assistance of Counsel because the Court raised it, that there's a concern that Mr. Conforti is incompetent and can't represent his client effectively.  The United States didn't argue that.  The United States didn't ask to remove him.  But now we have either he's effective and he should be allowed to continue, which I think that is what the Court is saying, or he's ineffective and should be removed, which we're not asking for, but this kind of middle ground, which is he's effective, but also I'm appointing an additional counsel to help him.

6

THE COURT:  Isn't it a fact that if the Court removed him, it would take an additional year for --

MR. PARMLEY:  That's true.

THE COURT:  -- Federal Defenders to get up to speed.

MR. PARMLEY:  That's true.

THE COURT:  I think that having his -- the benefit of his knowledge of the case would be helpful and that Federal Defenders, given their national resources and local resources, would be able to work with Counsel and get prepared for trial. And I had advocated a date in August for trial.

MR. PARMLEY:  And that -- sorry, go ahead.

THE COURT:  And I think -- and I would do a written order, and then the Government has an adequate basis -- and the reviewing appellate court would have an adequate basis for review.  I'm reluctant to relieve him -- the submissions only concerned his medical circumstance and his other cases.

MS. BETANCOURT:  Oh, okay.  I thought there was more to the submission just in -- and I'm also in a weird position.  We want to help the Court and we want to help Mr. Wei, but it seemed that the submission was going to address his ability to -- what he had done in this case to make the Court feel confident to continue.

THE COURT:  He did not.

MS. BETANCOURT:  Okay.  Because oftentimes --

7

THE COURT: Let me ask Mr. Conforti. He did not address any of his strategy in the case.

MR. CONFORTI: No.

THE COURT: No.

MR. CONFORTI: And I don't think it was my place to do that in that submission, given that this Court is presiding over the case. My duty is to my client and confidentiality. It was to address the Court's concern of what appeared to be concerns about my effectiveness with respect to the late filings. And I wanted to give the Court the background for one -- the reasons for it, which the Court understands.

THE COURT: Not a (indiscernible) on other cases. That was it.

MS. BETANCOURT: Okay.

THE COURT: So I still share some of your concerns, but I don't think that the remedy at this point is to -- I think I have discretion to relieve him, but I don't think the remedy at this point is to relieve him.

MR. PARMLEY: We're not asking the Court to, but the request was, "I'll be ready to go -- I'm not ready for trial now, but I'll be ready to go in six weeks." That was the request. And if that's the case -- I -- the Government is prejudiced by bringing on another counsel, whoever it is, whether it's -- we remove the case for a year from now, whether it's moved for a few months from now, we're

8

prejudiced.  We've had -- one of the case agents has been transferred, one of the case agents has retired.  You know, we're talking about an August trial date now.  Instead of six weeks, we're talking about 20 weeks.  We're talking about new counsel.  I don't know what the scope is of the representation.  Are we now -- I assume we're not revisiting the pre-trial motions that we've already litigated in this case.  I mean, there's -- you know, we're ready for trial.  We are prejudiced.  We submitted a trial memo.  We submitted an exhibit list.  We have submitted expert notifications.  Tomorrow was the day, and we were ready.  So there is prejudice to the Government here, your Honor.  I understand the Court is trying to deal with the situation the best you can, but --

THE COURT:  I'm just not available in six weeks.

MR. PARMLEY:  And I understand that.

THE COURT:  I'm not available because of preexisting commitments in June.  We need a -- at least a three-week -- we need a three-week block of time.  I'm not available in July.  I am available in August.  That's the first time that I would realistically, unless we did it in a week, which doesn't comply with his six-week request to get ready.

MR. PARMLEY:  That's correct.  And I'm not -- I've moved past that.  We're going to -- we're going to worry about

9

an August trial date.  I'm just concerned about litigation going forward.  You know, we had motions in limine filed, we're ready to argue, you know, the pre-trial motions are over, you know, what are we doing next?  So I guess we'll take that as it comes, your Honor, but I just want the Court to consider that, that --

THE COURT:  I am.

MR. PARMLEY:  -- that we're in that situation.

THE COURT:  And I've thought long and hard about that, but I think the best way forward to keep the continuity of counsel and his expertise in working on the case and to provide him additional resources, given his other commitments in his other cases, some of which the scope has changed based on the new administration -- he had a death penalty case, which it was not going as a death penalty case, and now it might be going as a death penalty case, at the same time that he's got this case.  And he mentioned in the last hearing he had an additional case, a drug case.  Is that right?

MR. CONFORTI:  Yeah, he was said to be the highest ranking member of the AFO that was not part of the family.  There was an 03CR case with 12 years of extradition proceedings, and we had set current trial dates between this Court and Judge Sabraw, and then we were thankfully able to resolve that case.  So that case just resolved in February, but it was still a massive, massive case while it was pending,

10

along with this case, plus the capital case.

THE COURT:  So the other case is over.

MR. CONFORTI:  The drug case is over.  The capital and CCE case is still ongoing, set for trial at the end of the year, after proposed August date, which I have no issue with in this case, and, obviously, this case in its complexities.

MR. PARMLEY:  And like I said, your Honor, we'll work with whatever counsel the Court appoints, and we'll get it done.  But --

THE COURT:  You were --

MR. PARMLEY:  -- the sooner the better, and let's --

THE COURT:  You were ready.

MR. PARMLEY:  Yes

THE COURT:  We were ready.  We had jurors ready. So of course the Court was disappointed to then suddenly be faced with a medical excuse for trial, based on not just that, but the Court's continuance of a number of things, but many of which, in reviewing the docket, were joint requests, mostly to provide the Defense the ability to get ready for trial.

MS. BETANCOURT:  Your Honor, obviously, I cannot promise that we would be ready to go in August, but understanding the scope of this case -- I saw the indictment when it was filed.  I've read through everything.  I've seen the trial brief.  And I think the resources available at our

11

office, I think we would make every endeavor to be ready to go on a trial -- on an August trial date as sole counsel. So the concern of having Mr. Wei having to wait a whole nother (sic) year, I don't know that it's necessarily there because I think we can make that work, understanding what we're up against here and why the Court is asking Federal Defenders to step in, even if it -- I'm concerned because Mr. Parmley raises a valid concern is that if we look at everything and see that there are pre-trial motions that should have been filed, we will be requesting to have another motion hearing date, we will be requesting to litigate motions in limines (sic) that weren't filed. I think there is a lot of strategic calls that Mr. Conforti made, stipulations that he's already agreed to, that I think maybe looking at it, you know, we might not necessarily agree that that was the right call, and maybe he is making those decisions because the trial date was coming up. And I don't know -- I -- I'm not -- I don't want to assume anything, but the Court already raised concerns about IAC, and if we're saying that there's motions to be filed and we don't file them, we're just adding to that issue that I think has already been raised by the Court. That's why I think in -- you know, and this happens in conflicts that arise weeks before or a week before trial, oftentimes, and new counsel has to be appointed. This happened to me on a number of occasions where I am ready to go, but a conflict arises and

12

the court has to take me off and new counsel has to be appointed despite me working with the client for a year for trial.  So it's not unheard of.  And I appreciate the relationship that he must have with Mr. Wei, because it's a very serious case, but also I think it's a very difficult position to put both Counsel in.  So I would ask if -- you know, again, we'll do whatever the Court wants, but I think the best course of action here to remedy any concerns that the Court might have, any issues that may be raised later, is to appoint Federal Defenders and allow us the opportunity to meet that August trial date as sole counsel.

THE COURT:  Mr. Conforti?

MR. CONFORTI:  Yes, your Honor.

I think underscoring -- an overlooked issue here is the Sixth Amendment right of Mr. Wei and his right to counsel of choice.  He doesn't have to retain his own counsel to have that right, right?  The Court's appointed counsel, that's the counsel he wishes to proceed with.  And if it's going to be more of a look at as second-guessing/armchair quarterbacking, that doesn't seem like a collaborative relationship to enter into.  And I respect Ms. Betancourt and what she's done for a long time before this Court -- I mean, she's missing significant components about this case to render those assumptions, right?  Because she doesn't have access to any of the discovery.  She has had no conversations with Mr. Wei.

13

And if it's going to be that sort of potential start to a relationship as defense team, doesn't sound very much like team.  It sounds like, "We want to come over and do what we want.  And if we disagree with what you did, we're going to do it different."  I don't appreciate that tenor, and I don't think Mr. Wei does either.  His leg is a little bit shaky and nervous over here.  He respects this relationship.  He's never raised an issue with respect to that.  He's understood the Court's issues, concerns, my medical issues.  If it's going to be a matter of additional --

THE COURT:  He's not a -- but he's not a lawyer.

MR. CONFORTI:  I understand --

THE COURT:  And under Ninth Circuit law, Sixth Amendment grants an indigent defendant the right to state-appointed counsel in a criminal case, and the Ninth Circuit has explained indigent defendants have a constitutional right to effective counsel, but not to have a specific lawyer appointed by the Court and paid for by the public.

MR. CONFORTI:  Understood.  But once the Court has made the decision as to who counsel will be -- he cannot sit up there and go through a list, say, "I want you to appoint this person for me."  But once the Court has established that attorney/client relationship by appointment, he then has an attorney/client relationship, and he can say whether or not he wishes to keep that lawyer or not keep that lawyer.  He's

14

never once made that request, and he's been emphatic about not wanting to make that request.  There are other avenues in which Counsel can bring in resources to this case, if that's the Court's concern.  Like I stated, I'm not opposed to working with Federal Defenders on this case, understanding the nature of the case and where we are, how much time I requested, and now how much time we would be given to an August 4th through August 11th trial date.  I have no issues. I think they have raised some concerns that they seem to be coming into this case with, and that -- that's fine.  But as of right now, they're not part of the case.  And I think if it's looking at their -- Federal Defenders' concerns versus Mr Wei, I think it would be in favor of Mr. Wei and his right to choice of counsel and other resources.

THE COURT:  He doesn't get to choose his court-appointed counsel.  And if the Court has concerns about court-appointed counsel, the Court has an independent obligation to relieve court-appointed counsel and appoint new counsel.  And the fact that that would take additional time, that's just what happens.

The Court does believe that Mr. Conforti has demonstrated some valid medical reasons for a current continuance.  The Court is not available in six weeks.  And the Court does believe that giving additional resources by having Federal Defenders step in with him to the case then

15

reduces the -- it adds additional resources for Mr. Conforti and would benefit the Court because the Court has full confidence in Federal Defenders' ability to work with co-counsel.

And so the Court denies your request to be new counsel, appreciates the Government's concerns, but I think the record will be benefitted by having co-counsel in this case.  He did point out that at most hearings, there have been two counsel for the -- at least two counsel for the --

MR. PARMLEY:  That's true.  Sometimes three.

THE COURT:  -- Government.  And so -- and it used to be three, but no more.  And sometimes three.

So the Court respectfully will grant a continuance, will set a motion in limine date for April 4.  Is that -- not April.  August 4.

MR. PARMLEY:  Your Honor, if the Court is looking at trial dates, after speaking with my co-counsel, the case agent, and other witnesses, really the best weeks for a trial are either the 4th or the 11th of August.  And I've spoken to Mr. Conforti, not with Ms. Betancourt, about it, but those work for Mr. Conforti.

THE COURT:  Well -- so I could do motions in limine on the 4th and trial on the 5th.

MR. PARMLEY:  That would be great.

THE COURT:  And then I had time-screen jurors for

16

three weeks, and the Court will time-screen jurors for three weeks based on the parties' estimate.

MS. BETANCOURT:  Your Honor, I'm assuming that the Court is setting the in lim date as -- with just the Government's motions and Mr. Conforti just responding to those.  Is it possible to set a motion in limine date two weeks in advance and --

THE COURT:  It's not.

MS. BETANCOURT:  Okay.

THE COURT:  So this is the problem of -- I'm not available in July.

MS. BETANCOURT:  Well then, can we do the 4th for in lims and trial starting the 11th, so we have a sense of how to start the -- what the case will entail versus one day in advance?

THE COURT:  The 11th --

MR. PARMLEY:  To start with the Government -- yeah.

THE COURT:  The 11th works?

MR. PARMLEY:  The 4th or the 11th are both fine.

THE COURT:  Okay.  So we'll do motions in limine on the 4th and trial on the -- trial on actually the 12th --

MR. PARMLEY:  12th.

THE COURT:  Trial at 9:00 a.m. on the 12th. Motions in limine, let's do them at 1:30.  And then if the Defense, after discussing the matters together, wishes to file

17

more motions in limine, then they should be filed by July 7 with any opposition by July 21.  I'm not inviting them, if there was a strategic reason to do motions.  I've also reviewed the expert reports that were attached, and you received the expert reports and submissions, and I don't believe that a Daubert hearing is necessary.

MR. PARMLEY:  One other thing, your Honor.  The Court asked the Government to provide A-File documents, bring them to the hearing today, which we've done.  The Court had some concerns or questions at least about the A-File.  The A-File has been -- all of the documents were produced long ago, but the A-File in its entirety has been produced.  And we have the documents that we would intend to introduce in trial, but I don't know if you want to -- if this is premature and you wanted to --

THE COURT:  No, no.  Then I would like to --

MR. PARMLEY:  Okay.

THE COURT:  -- review them.

MR. PARMLEY:  Okay.  Thank you.  I can --

THE COURT:  And have you shown Defense which ones you were going to --

MR. PARMLEY:  I think I've -- I'm trying to remember, your Honor, it was a few weeks ago.  I think I e-mailed Counsel as to what I was going to introduce.  It was on the exhibit list with the Bates numbers.  It's 10 documents.

18

THE COURT:  And how big is the A-File?

MR. PARMLEY:  A-File is probably -- well, there's an electronic A-File and a regular A-File.  It's probably about 200 pages for the A-File and probably about 50 pages for the electronic file.  And those have been produced in discovery.

THE COURT:  And since Defense might want to introduce some other documents, that's why I thought maybe I should review the whole of the A-File.

MR. PARMLEY:  Well, I'm happy to bring that.  Do you want me -- I'm happy to make that available to the Court in the best way possible.  Whatever is easy --

THE COURT:  And it's already been provided to the Defense.

MR. PARMLEY:  Correct.

THE COURT:  So we could do that some other Monday --

MR. PARMLEY:  That would be fine.

THE COURT:  -- afternoon.  And then I'll see the documents --

MR. PARMLEY:  Sure.

THE COURT:  -- you're intending to introduce.

And then for exhibit list, you had provided an exhibit list to Counsel.  Is that right?

MR. PARMLEY:  It's a draft exhibit list, which is

19

pretty close to final and was attached to our trial memo, your Honor.  And these exhibit stickers are -- I mean, you can see that it starts with Exhibit 160, just because -- how they were marked originally, but --

THE COURT:  And question on the A-File documents, did you redact?

MR. PARMLEY:  We have on the version that would be shown to the jury.  Just the Social Security number, yes.

THE COURT:  This one?

MR. PARMLEY:  No, that's the original.

THE COURT:  Oh.  So can you provide to the Court the redacted version --

MR. PARMLEY:  Be happy to.

THE COURT:  -- that you intend to like -- any reference to punishment or something should be removed.

MR. PARMLEY:  Yes.  It's a little bit different, your Honor.  It's not -- since it's not a 1326 case, it's a naturalization fraud case, it's really just the documents that relate to -- you know, there's no removals, there's no deportations.  It's just kind of the documents that relate to naturalization.  Like, here's -- here's what time your interview is, here's the form you fill out, here's the oath you take, did you sit -- you know, re-interviewing.  But I'll review those again and make certain those have all been redacted, and I can provide those to the Court, whatever the

20

best way the Court would like me to do that.  Would you like to see the whole A-File, or you just want to see these documents redacted?

THE COURT:  I wanted to see the whole A-File in that -- in the event that something --

MR. PARMLEY:  Sure.

THE COURT:  -- the Defense wants to introduce something, and then we're in the middle of trial, and then there's too many pages for me to review or something.

MR. PARMLEY:  Would you like a paper copy, your Honor, or an electronic copy?

THE COURT:  Oh, paper would be wonderful.

MR. PARMLEY:  I would be happy to provide it.

THE COURT:  Thank you.

Anything else today?  So we have the motion in limine hearing.  We have the trial hearing.  I will pre-screen the jurors.  The Defense had asked for 65 jurors based on a three-week trial.  You had asked for 50 --

MR. PARMLEY:  Sixty-five is fine, your Honor.

THE COURT:  Sixty-five.  We ended up having in the last go-round 78 available jurors, and I was going to bring them all in because they were available.  And you never know when they say they're available, will they --

MS. BETANCOURT:  Show up -- right.

THE COURT:  -- show up on the day of the trial?

21

MR. PARMLEY:  And, to be clear, even though we're screening for three weeks, we're pretty confident that we can get through our trial -- the vast majority of it within a week, which it could be bleeding into a second week within witness or two, an argument and Defense argument and deliberation, but I would be very surprised if we got into a third week.

THE COURT:  Why I say the additional week is you don't know how long --

MR. PARMLEY:  Sure.  Sure.

THE COURT:  -- they're going to deliberate.

MS. BETANCOURT:  Absolutely.  Appreciate that, your Honor.

THE COURT:  Any objection to that?

MS. BETANCOURT:  To the 78 -- without seeing anything and only having read the trial memorandum, the indictment, Mr. Conforti's motion to request the continuance, and the transcript of the hearing on Friday, at this point, no, your Honor.

I do have just -- is the Court in this particular case allowing attorney-conducted voir dire?

THE COURT:  That was one of the motions in limine by the Government.

MS. BETANCOURT:  Okay.

THE COURT:  I'm submitting that.  We're having a

22

motion in limine hearing on August 4.

MS. BETANCOURT:  Okay.  So --

THE COURT:  And I will request -- I do request a week before the motion in limine, that you submit proposed written trial -- written voir dire questions.

MR. PARMLEY:  Yeah, those were submitted in our trial memo, your Honor.

THE COURT:  Thank you.

MS. BETANCOURT:  Okay.  We'll coordinate with Counsel to see if he had already had that prepared and --

THE COURT:  Anything else?  And I'll --

MS. BETANCOURT:  Just, with respect to discovery, should I just coordinate with Mr. Conforti or --

MR. PARMLEY:  You can come to us.  We'll figure it out.

MS. BETANCOURT:  Okay.  And maybe I'll just --

MR. PARMLEY:  It's easier for us to reproduce it.

MS. BETANCOURT:  Okay.

THE COURT:  All right.  And then the Court will do a written order.

MR. PARMLEY:  Right.

MS. BETANCOURT:  Thank you, your Honor.

MR. PARMLEY:  Thank you, your Honor.

MR. CONFORTI:  Thank you, your Honor.

THE COURT:  Thank you.

23

THE CLERK:  That concludes our matters, and we're off the record.

(Proceedings concluded.)

24

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/Chinago Okonta                    3/2/2026
Transcriber                          Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

/s/L.L. Francisco
L.L. Francisco, President
Echo Reporting, Inc.